MARY ELLEN PRITCHARD *v.* JAMES L. PRITCHARD
(AC 25068)

Bishop, Lavine and Dupont, Js.

Argued May 24—officially released August 14, 2007

*Robert D. Snook*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan Quinn Cobb*, assistant attorney general, for the appellant (state).

*Albert Lau*, with whom was *David V. DeRosa*, for the minor children.

*Opinion*

BISHOP, J. The authority of family support magistrates is defined and limited by statute. Although judges of the Superior Court exercise general jurisdiction, the court must act, in this area of the law, in a manner consistent with the statutory scheme governing the family support magistrate division of the Superior Court.

In this matter, which is before us on remand from our Supreme Court,[1] resolution of the issues we confront requires us to examine the Family Support Magistrate's Act, General Statutes § 46b-231 et seq., and the interplay between Superior Court judges and family support magistrates. The state of Connecticut, support enforcement services, appeals from the January 12 and August 24, 2004 judgments of the trial court rendered after the Superior Court "interceded" in a support enforcement action pending before the family support magistrate.[2] The state claims that the court improperly intervened in a matter pending before the family support magistrate, improperly vacated the magistrate's findings and retroactively modified the magistrate's orders without notice to the parties and in the absence of an appeal filed pursuant to § 46b-231 (n). Although we conclude that § 46b-231 (q) authorizes the Superior Court to intervene in a matter pending before the family support magistrate, the Superior Court does not have the authority to vacate orders issued by the family support magistrate in the absence of notice to the affected parties or an appeal filed pursuant to § 46b-231 (n). Accordingly, we reverse the judgments of the trial court.

The following facts, as set forth by this court; see *Pritchard* v. *Pritchard*, 92 Conn. App. 327, 330–33, 885 A.2d 207 (2005), rev'd, 281 Conn. 262, 914 A.2d 1025 (2007); and adopted by the Supreme Court, are relevant to the resolution of the issues before us. "The plaintiff, Mary Ellen Pritchard, and the defendant, James L. Pritchard, were married on May 5, 1979. Two children were born of the marriage. On June 11, 1996, the parties were divorced. Pursuant to the judgment of dissolution,

[1] In *Pritchard* v. *Pritchard*, 281 Conn. 262, 914 A.2d 1025 (2007), the Supreme Court reversed this court's dismissal of the state's appeal for lack of a final judgment and mootness and remanded the matter to this court for consideration of the merits of the state's appeal.

[2] The minor children of the parties also have filed a brief in this appeal that basically reiterates the position of the state.

the defendant was ordered to pay, inter alia, child support in the amount of $180 per week and alimony in the amount of $100 per week. An alimony arrearage of $7549.80 was also found by the court, and the defendant told the court that he would continue to refuse to pay the delinquent alimony. In response, certain bank orders were issued. Nevertheless, on November 1, 1996, pursuant to a motion for contempt, the court found the defendant to be in arrears $3600 in child support, $2000 in alimony and $303 in unreimbursed medical expenses. Finding the defendant in contempt, the court issued additional bank orders, transferring certain moneys to the plaintiff. Following the transfer of the bank funds to the plaintiff, which did not clear up the arrearage entirely, the court appointed an attorney for the defendant on March 31, 1997, finding that the defendant was in jeopardy of incarceration for his failure to comply with the orders of the court.

"In response to another motion for contempt filed by the plaintiff, the court, *Axelrod, J.*, on November 25, 1997, denied the motion because it concluded that the plaintiff, herself, had failed to comply with the orders of the court regarding the transfer of certain Florida property to the defendant and that her delay had caused the defendant to lose that portion of the property that the plaintiff had been ordered to transfer to him. The court did find, however, that the defendant owed an arrearage of $13,107.95, consisting of $1700 in alimony, $11,160 in child support and $247.95 in unreimbursed medical expenses. The court also stated that, pursuant to the terms of the judgment of dissolution, alimony had terminated on October 10, 1996, and the court ordered the payment on the arrearage to be $35 per week, with an increase as each child reached majority. On September 3, 1998, the plaintiff filed another motion for contempt, which was heard on September 8, 1998. After the defendant failed to appear for the hearing on

the contempt motion, the court found that the arrearage was $27,608.70, and it issued a capias, finding the defendant in contempt.

"On July 3, 2000, a new capias was issued after it was discovered that the original had been lost. On September 12, 2002, the defendant was arrested and bond was set at $30,000. After setting the bond, the court, *Rodriguez, J.*, referred the matter to the family support magistrate. On September 18, 2002, the family support magistrate, *John P. McCarthy*, found the defendant in contempt and set a purge figure of $65,588.70, the amount of the support arrearage. The defendant continued to be brought before the court on a monthly basis for review of the contempt finding. On April 2, 2003, the magistrate increased the defendant's purge amount to $70,628.70 and also set a bond of $10,000.

"On April 23, 2003, the defendant filed a motion for contempt against the plaintiff, alleging that her failure to transfer the Florida property in a timely manner amounted to a fraudulent conveyance.[3] On July 30, 2003, during one of the monthly reviews of the defendant's incarceration on the contempt finding, the magistrate found that property owned by the defendant in Bethel had been fraudulently transferred to the defendant's companion, Suzanne Spellman, and the magistrate ordered that the defendant could be released if Spellman placed a mortgage on the property to secure a lien in the name of the plaintiff and then sold the property and paid the plaintiff. On November 26, 2003, the magistrate lowered the defendant's purge amount to zero and set a bond of $30,000. On December 4, 2003, the state filed a motion for reconveyance of the Bethel property

[3] "The state argues that this motion was withdrawn on May 12, 2003. Although there is a notation to that effect at the bottom of the motion, the case detail sheet does not show that this motion was withdrawn." (Internal quotation marks omitted.) *Pritchard* v. *Pritchard,* supra, 281 Conn. 266 n.2.

with the Superior Court.[4] On December 15, 2003, Spellman and the defendant appeared before the Superior Court for a hearing on the motion for reconveyance. On January 7, 2004, the magistrate lowered the defendant's bond to $5000, and set another review date for the following week, January 14, 2004.

"On January 12, 2004, after a hearing on the state's motion for reconveyance, the court, *Shay, J.*, ordered the defendant released from custody and vacated [the finding of an arrearage], the capias, the bond and all prior findings of contempt.[5] The court also suspended the payment of child support and continued the matter until April 19, 2004. The state filed an appeal from the January 12 [2004] judgment. . . . The state claimed on appeal that the trial court lacked authority under General Statutes §§ 46b-231 (q) and 46b-86 to vacate the prior orders issued by the Superior Court and the family support magistrate when the defendant had not appealed from or otherwise challenged those orders. Subsequently, on April 26, 2004, the trial court found that the defendant had fraudulently transferred the Bethel property to Spellman, but stayed enforcement until it could recalculate the amount of arrearage.

---

[4] "The court case detail sheet shows this motion, no. 185, as having been filed on December 4, 2003. The motion in the court's file, however, contains three different date stamps, one on November 14, 2003, one on November 26, 2003, and the last on December 4, 2003. The order to show cause itself also shows that it was signed on November 19, 2003, by Judge Mintz, ordering Spellman and the defendant to appear on December 15, 2003, to show cause why the motion should not be granted. The notice of lis pendens was filed with the Bethel town clerk on November 24, 2003, a certified copy of which is contained in the court file." (Internal quotation marks omitted.) *Pritchard* v. *Pritchard*, supra, 281 Conn. 266 n.3.

[5] "The trial court stated at the January 12, 2004 hearing that it was 'vacating the previous order of contempt, nunc pro tunc. There is no contempt. . . . There is an arrearage that is to be determined, and we're going to set up a hearing . . . to determine . . . the proper arrearage as of [September 8, 1998, the date of the original arrearage order].' The court further ordered that the defendant 'be freed forthwith.' " *Pritchard* v. *Pritchard*, supra, 281 Conn. 267 n.4.

"On August 24, 2004, the trial court issued a memorandum of decision in which it reiterated its January 12, 2004 orders, recalculated the amount of arrearage and ordered the defendant to make certain payments. . . . The court explained that it had vacated the September 8, 2002 contempt order because the original court order did not comport with the fundamentals of due process . . . . With respect to its ruling vacating the arrearage order, the court recognized that the defendant had never filed a motion for modification. It concluded, however, that it was 'equitable and appropriate' to treat the defendant's April 23, 2003 motion for contempt[6] against the plaintiff for her failure to comply with orders concerning the transfer of the Florida properties as a motion to reopen the September 8, 1998 judgment, because the defendant consistently contended that the loss of the Florida real estate was somehow tied to his child support obligation . . . . Accordingly, the court concluded that it was authorized to vacate the finding of contempt and to modify the existing child support orders. The state then filed an amended appeal from that decision, indicating that the original judgment was the one rendered on January 12, 2004. Attached to the amended appeal was an amended preliminary statement of issues in which the state raised two new issues related to the August 24, 2004 ruling." (Citations omitted; internal quotation marks omitted.) *Pritchard* v. *Pritchard*, 281 Conn. 262, 264–68, 914 A.2d 1025 (2007).

Emerging from this procedural and factual history are the following issues: whether the court had the authority to intervene in the matter that was pending before the family support magistrate and, if so, whether the court properly vacated the capias, contempt and

[6] "The trial court referred to the defendant's 'March 5, 2003' motion for contempt. The motion was signed by the defendant on March 5, 2003, but was listed on the case detail sheet as having been filed on April 23, 2003." *Pritchard* v. *Pritchard*, supra, 281 Conn. 268 n.7.

arrearage orders, and modified the ongoing support order. We respond to each issue in turn.

At the outset, we address the applicable standard of review. The state's claims on appeal rest on our interpretation of the Family Support Magistrate's Act, § 46b-231 et seq. "Issues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Citations omitted; internal quotation marks omitted.) *Alvord Investment, LLC* v. *Zoning Board of Appeals*, 282 Conn. 393, 401–402, 920 A.2d 1000 (2007). With the foregoing legal principles in mind, we turn to the state's specific claims.

To resolve the issues before us, we begin with the language of § 46b-231 (q), which provides: "When an order for child or spousal support has been entered against an obligor by the Superior Court in an action originating in the Superior Court, such order shall supersede any previous order for child or spousal support against such obligor entered by a family support magistrate and shall also supersede any previous

agreement for support executed by such obligor and filed with the Family Support Magistrate Division." Thus, according to the plain language of the statute, the Superior Court may enter support orders in a case that had been pending before the family support magistrate but which originated in the Superior Court.

The Superior Court's authority to intervene in a matter pending before a magistrate is further supported by our jurisprudence regarding the proper exercise of jurisdiction. "Our legislature has consistently drafted legislation to state expressly when a court has exclusive jurisdiction." *Sender* v. *Sender*, 56 Conn. App. 492, 498, 743 A.2d 1149 (2000). "The Superior Court of this state as a court of law is a court of general jurisdiction. It has jurisdiction of all matters expressly committed to it and of all others cognizable by any law court of which the exclusive jurisdiction is not given to some other court. The fact that no other court has exclusive jurisdiction in any matter is sufficient to give the Superior Court jurisdiction over that matter." (Internal quotation marks omitted.) *LaBella* v. *LaBella*, 134 Conn. 312, 316, 57 A.2d 627 (1948).

General Statutes § 46b-231 (d) provides: "There is created the Family Support Magistrate Division of the Superior Court for the purpose of the impartial administration of child and spousal support." General Statutes § 46b-231 (b) (6) provides: " 'Family Support Magistrate Division' means a division of the Superior Court created by this section for the purpose of establishing and enforcing child and spousal support in IV-D cases and in cases brought pursuant to sections 46b-212 to 46b-213v, inclusive, utilizing quasi-judicial proceedings . . . ." As a creature of statute, the family support magistrate division has only that power that has been expressly conferred on it. Thus, while a family support magistrate has only the authority granted by statute, the Superior Court is a court of general jurisdiction and

has authority over all cognizable claims not given to some other court.

Although the primary role of the family support magistrate division is the enforcement of support orders, General Statutes § 46b-212h (a) grants the family support magistrate division *or* the Superior Court exclusive jurisdiction over child support orders. Thus, because the legislature has not given the family support magistrate exclusive jurisdiction over child support matters and has specifically given the Superior Court jurisdiction in such matters, the Superior Court has authority to hear a support matter even if the magistrate has already exercised jurisdiction in that matter.

The authority of the Superior Court, however, is not unbounded. Although § 46b-231 (q) provides that a judge may enter orders that would supersede those of a magistrate, this provision must be read in harmony with the other provisions of the Family Support Magistrate's Act. "In giving a statute its full meaning where that construction is in harmony with the context and policy of the statute, there is no canon against using common sense in construing laws as saying what they obviously mean." (Internal quotation marks omitted.) *Singh* v. *Singh*, 213 Conn. 637, 655, 569 A.2d 1112 (1990). Section 46b-231 (n) provides an avenue to appeal a decision of a family support magistrate to the Superior Court.[7] To read subsection (q) as allowing the Superior

[7] General Statutes § 46b-231 (n) provides in relevant part: "(1) A person who is aggrieved by a final decision of a family support magistrate is entitled to judicial review by way of appeal under this section.

"(2) Proceedings for such appeal shall be instituted by filing a petition in superior court for the judicial district in which the decision of the family support magistrate was rendered not later than fourteen days after filing of the final decision . . . .

"(7) The Superior Court may affirm the decision of the family support magistrate or remand the case for further proceedings. The Superior Court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the decision of the family support magistrate is: (A) In violation of constitutional or statutory provisions; (B) in excess of the statutory authority of the family support magistrate; (C) made upon

Court to vacate an order of a magistrate in the absence of an appeal would render subsection (n) meaningless. Thus, a Superior Court judge may vacate orders of a family support magistrate only when the criteria for appealing that order have been satisfied.

We now apply the general conclusions reached previously to the specific facts of the case before us. As noted, this case originated in the Superior Court as a dissolution matter. Subsequent to the judgment of dissolution, the plaintiff sought the services of the child support enforcement bureau to help her collect the child support she was owed by the defendant by virtue of the dissolution judgment, and the matter was referred to the family support magistrate division. For a period of several years, the family support magistrate enforced the support orders, periodically finding the defendant in arrears and in contempt. When the state filed its motion for reconveyance in the marital dissolution matter, the case was returned to the regular Superior Court docket due to the magistrate's limited jurisdiction. Because the present case fits squarely within the plain language of § 46b-231 (q), the court properly could have entertained the issue of prospective child support. Additionally, the capias that ordered the defendant into the custody of the court was an ongoing matter over which the court properly could exercise its authority. However, although the court had the authority to intervene in this matter and to make prospective orders, because the defendant did not appeal from the previous arrearage and contempt orders, and the court was not exercising its statutory appellate authority, therefore, the court did not have the authority to vacate those previously made orders.[8]

---

unlawful procedure; (D) affected by other error of law; (E) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

[8] The court vacated not only the findings of the magistrate, it also vacated the contempt and arrearage order made by a judge of the Superior Court

The state also claims that it was not afforded adequate notice of the court's intention to modify the support orders. At the outset, we note the principles underlying the necessity for adequate and proper notice. "It is the settled rule of this jurisdiction, if indeed it may not be safely called an established principle of general jurisprudence, that no court will proceed to the adjudication of a matter involving conflicting rights and interests, until all persons directly concerned in the event have been actually or constructively notified of the pendency of the proceeding, and given reasonable opportunity to appear and be heard. . . . It is a fundamental premise of due process that a court cannot adjudicate a matter until the persons directly concerned have been notified of its pendency and have been given a reasonable opportunity to be heard in sufficient time to prepare their positions on the issues involved." (Citation omitted; internal quotation marks omitted.) *Egan* v. *Egan*, 83 Conn. App. 514, 518, 850 A.2d 251 (2004).

Here, the only motion before the court when it vacated the prior contempt and arrearage orders and modified the ongoing support order was the state's motion for reconveyance of real estate. Although the state sought a reconveyance of property as an avenue for enforcing the support order, there was no motion pending before the court to modify the prior support orders. The court indicated that it was construing the defendant's motion for contempt, filed April 23, 2003, which may have been withdrawn, as a motion for modification. Because that motion did not even mention child support, it could not fairly be read as a request for modification of support.[9] Thus, because the motion

on September 8, 1998. We are unable to find any authority for the court's action in this regard.

[9] Practice Book § 25-26 (e) provides: "Each motion for modification shall state the specific factual and legal basis for the claimed modification and shall include the outstanding order and date thereof to which the motion for modification is addressed."

for contempt was not before the court, and the motion before the court did not pertain to child support, none of the parties had notice that the court might vacate the prior contempt and arrearage orders and modify the support order.[10] Because the court acted in violation of the state's due process rights to be given adequate notice of the issues the court intended to address, and, accordingly, to be given a reasonable opportunity to be heard in sufficient time to prepare a position on the issues involved, the action taken by the court cannot stand.[11]

In sum, pursuant to § 46b-231 (q), the court properly intervened in this matter and, because the defendant's imprisonment was ongoing, the court properly released him from incarceration. Because there was, however, no appeal filed from the prior arrearage and contempt orders, the court exceeded its authority in vacating those orders. Additionally, although the court had the authority to enter prospective orders pursuant to § 46b-231 (q), the court improperly modified the support orders in that it did so without giving adequate notice to the parties.

The judgments vacating the arrearage and contempt orders and modifying the child support order are reversed.

In this opinion the other judges concurred.

---

[10] The court orally notified the parties at the December 15, 2003 hearing that it might release the defendant from incarceration at his next court date, January 12, 2004.

[11] Furthermore, even if there had been a motion for modification pending or the court properly had given notice to the parties, it is well settled that a court may not modify a financial order retroactively. See General Statutes § 46b-86 (no order for periodic payment of support may be subject to retroactive modification); *Sanchione* v. *Sanchione*, 173 Conn. 397, 405–406, 378 A.2d 522 (1977).