JAMIE STYRCULA *v.* KEITH STYRCULA
(AC 33539)

Gruendel, Espinosa and Pellegrino, Js.

Argued September 27—officially released December 25, 2012

*Mark R. Soboslai*, for the appellant (plaintiff).

*Keith Styrcula*, pro se, the appellee (defendant).

PELLEGRINO, J. The plaintiff, Jamie Styrcula, appeals from orders of the trial court (1) granting a postjudgment motion for modification of the parties' dissolution judgment in favor of the defendant, Keith Styrcula, and (2) denying the plaintiff's motion to reargue the modification motion. On appeal, the plaintiff contends that the court improperly decided the defendant's motion for modification without providing appropriate notice to the parties, thereby depriving the plaintiff of her due process rights to notice and the opportunity to participate fully in an evidentiary hearing concerning modification. We agree and, accordingly, reverse the judgment of the trial court modifying the dissolution judgment and remand the case for a hearing on the defendant's motion to modify.

The record reveals the following facts and procedural history. The trial court, *Tierney, J.*, dissolved the marriage of the plaintiff and the defendant on November 9, 2004, incorporating into the judgment the parties' separation agreement of the same date. The separation agreement provides, inter alia, that the defendant, employed at JP Morgan Chase at the time, would pay the plaintiff unallocated alimony and child support based on a sliding scale, which required him to pay 55 percent of his "gross annual earned income" up to $250,000 and 35 percent of any "gross annual earned income" between $250,001 and $550,000. The separation agreement further provides that moneys received by the defendant from any "intellectual property" earnings[1] "shall be excluded from the calculation of 'gross annual earned income' . . . ."[2]

---

[1] Section 3.6 (b) of the separation agreement defines "intellectual property" as "including, but not limited to, copyrights, patents, trademarks, real property, books, screenplays, plays, collectibles or corporate entities . . . ."

[2] The separation agreement states that the payments of unallocated alimony and child support are nonmodifiable as to amount and term, except in certain delineated circumstances. Section 3.4 of the agreement sets forth the circumstances under which either party would be allowed to move for

At the end of 2005, the defendant was discharged from his position at JP Morgan Chase. He began working on various "business projects," but he claimed that income derived from the projects was "intellectual property income," excluded from the calculation of his support payments under the separation agreement. The defendant also spoke at various business conferences after the termination of his employment; he claimed that the net proceeds from these conferences went to his fiancée, an event planner, to give her a steady stream of income for herself and her children.[3]

In June, 2008, the plaintiff filed a motion for contempt arguing that the defendant purposefully had reduced his income to deprive her and their minor children of support. On February 11, 2009, the trial court, *Hon. Dennis F. Harrigan*, judge trial referee, issued a memorandum of decision finding the defendant's testimony regarding his lack of income "incredible." The court imputed an earning capacity of $250,000 to the defendant and concluded that he was "in contempt for failing to pay the unallocated order of $137,500 for the calendar year 2008."[4] The court determined the defendant's arrearage and set a purge amount of $50,000, which the

---

modification, including, inter alia, that the defendant "shall be entitled to move for a modification . . . should there be a substantial, non-voluntary downward change to his yearly employment income caused by a disability or termination from employment." Section 3.4 further provides that "[t]he [defendant] earned approximately $400,000 per year prior to this action for divorce . . . and that this figure shall be the benchmark to be considered by the [c]ourt in determining whether there has been a substantial downward change in the [defendant's] income." Additionally, § 3.5 of the agreement provides that in the event either party successfully moves to modify the amount of unallocated alimony and child support, the plaintiff has the right to move to modify the definition of "gross annual earned income" to include the consideration of the defendant's "intellectual property" income.

[3] The trial court, *Hon. Dennis F. Harrigan*, judge trial referee, calculated that in April, 2008, the defendant may have grossed as much as approximately $460,000 from one conference.

[4] The $137,500 figure represents 55 percent of the defendant's imputed $250,000 earning capacity, as set forth in the separation agreement.

defendant's fiancée paid after the court issued a capias resulting in the defendant's arrest and incarceration.

On June 10, 2010, the plaintiff again filed a motion for contempt, claiming that the defendant had failed to pay alimony and support in accordance with the court's February 11, 2009 order. The plaintiff asserted that pursuant to the order, the defendant was required to pay $137,500 per year—or $11,458.33 per month—for calendar years 2008, 2009 and 2010. The plaintiff claimed that out of the $343,750 due for the period in question, the defendant had paid only $251,173.33.

The trial court, *Shay, J.*, held a hearing on the plaintiff's motion for contempt on August 9, 2010. The court provided a framework for the hearing by analogizing contempt to "a relatively straightforward three-legged stool. . . . The first thing is a clear, unequivocal order, which we have. The second leg is a failure to meet that clear and unequivocal order . . . . [T]he third leg of the stool is the question of if there was a failure to meet that obligation, was it wilful and without good cause? That's the bona fides, that's the third leg; it's the most difficult leg of the stool."

The court continued with its three-legged stool analogy and stated that with respect to the first leg, Judge Harrigan's order requiring the defendant to pay 55 percent of the imputed $250,000 earning capacity represented the "current order" in the case. Turning to "[l]eg number two," the parties stipulated that as of the date of the hearing, the defendant owed an arrearage of $109,648.08. The court stated that, regarding the third leg, it needed to determine the defendant's bona fides— an inquiry for which the court placed the burden on the defendant to show that his failure to comply with the support order was not "wilful disobedience."

The defendant then testified at the hearing regarding his various business ventures and presentations. Specifically, he indicated that all revenues from his conferences and expositions went to his fiancée's event planning business, Pomegranate Ventures, LLC (Pomegranate), but that pursuant to a "new working relationship" with Pomegranate, he received half of Pomegranate's profits. When questions arose regarding the accounting of income between the defendant's Structured Products Association and Pomegranate, the court continued the hearing to a later date so the parties could engage in further discovery if necessary.

Subsequent to the hearing, on August 17, 2010, the defendant filed a motion to modify the separation agreement. The defendant claimed that he had only worked sporadically since the court's February 11, 2009 decision, and, therefore, he was earning substantially less than the $250,000 earning capacity attributed to him by the court.

On March 1, 2011, the parties returned to court for the continuation of the August 9, 2010 hearing. At the outset of the hearing, the court noted that "we had some unfinished business in August of [2010] . . . [which had] bubbled forth again." When the court confirmed with the plaintiff's counsel that the court's "calendar says [the contempt motion]," the defendant's attorney alerted the court that the defendant had filed the motion for modification in the interim between the hearing dates and suggested that he had anticipated the court hearing both motions. The plaintiff's attorney interjected and stated that the defendant's modification motion "is not before the court today. This is a continuation of a hearing on August 9, 2010. . . . And it's a contempt hearing."

The court addressed the defendant's counsel and said, "[the plaintiff's counsel] is saying it's [the contempt

motion] or nothing." The defendant's counsel responded that "we were here on [the contempt motion]; that's accurate. And we did commence evidence before Your Honor, and that is accurate. Our [modification motion] is dated August 17 and indeed is time stamped August 17 as well." The defendant's counsel stated: "I think that if nothing else, the court should hear both motions. I spoke with [the case flow coordinator] last week. . . . And I said to him, first of all, are we on for Tuesday . . . . He said, we're on. . . . And I said, you've got [the contempt motion] and [the modification motion] on. He said, we just have [the contempt motion] on. And I said, well, my assumption was that all motions were coming over to March 1." The defendant's counsel indicated that he did not contact the plaintiff's counsel to discuss his conversation with the case flow coordinator.

The court then questioned the plaintiff's counsel regarding whether the court could proceed with both the contempt motion and the modification motion, stating: "[A]s a practical matter . . . modification's generally the flip side of the coin. . . . [T]he evidence is almost exactly the same; it's a question of the—you know, on the one hand it's the person's wilfulness or their ability to comply with an order, and, on the other, we're getting into sort of very similar, which is what is their actual income." The court asked, "if this issue is going to come before the court eventually, why not sooner rather than later?"

In response, the plaintiff's counsel stated that he was "blindsided" by the prospect and that he "didn't know [the defendant's counsel] was going to raise [the modification motion]. I thought we were here, and that's what I prepared for. . . . To finish [the contempt motion]." After the defendant's counsel argued again that the court should consider both motions at the hearing, the court stated: "I'll tell you what. I hear you both. I've

stood where you both stood . . . . I do understand if, for whatever reason, the signals that came out of this court were that it's just [the contempt motion] and that's it. So, unless you two guys get on the same page on that one, we're just going to finish up [the contempt motion]. . . . [W]e'll do [the contempt motion]. We'll see how that goes. If anybody changes their minds later, whatever . . . . I am free today. So that if lightning struck I would be certainly willing to wade in and finish up the other issue, too. But let's do [the contempt motion] and see where we are, how we go with that."

Following this colloquy, the defendant returned to testify. At the outset of the defendant's testimony, the court reiterated that "this is a wilfulness hearing." Similarly, the court stated at one point during the defendant's testimony that "[t]his is not modification. This is bona fides. This is his abilities." The defendant testified regarding, inter alia, his financial affidavit, his business ventures, his conferences and his relationship with his fiancée and Pomegranate. During closing arguments, the plaintiff's counsel returned the court's attention to the three-legged stool metaphor and focused the argument on the third leg of the stool: wilfulness. At no point in the plaintiff's argument did counsel mention modification. Similarly, the defendant's counsel also focused his closing argument on the three-legged stool analogy and specifically stated, "I, too, am limiting my argument to one of wilfulness."[5] After the parties had completed their closing arguments, the court ended the hearing.

On April 5, 2011, the court issued a "Memorandum of Decision Re: Motion for Modification (#257.00)." The decision noted that "[t]he present matter comes before

[5] The defendant's counsel also recognized that the March 1, 2011 proceeding before the court did not concern his modification motion, stating: "When we have our hearing on the motion for modification . . . perhaps we can actually get this [earning capacity] lowered to a reasonable number . . . ."

this court by way of the [plaintiff's] . . . Motion for Contempt (#252.00) dated June 10, 2010, as well as the [defendant's] . . . Motion for Modification (#257.00) dated August 17, 2010." The court found that "the evidence demonstrates that the [defendant's] pre-tax income from self employment is $73,980; that, therefore, this constitutes a substantial downward change in his income; and that based upon the formula set forth in [the separation agreement] . . . his unallocated alimony and child support obligation is $40,689 per annum, or $3390.75 per month." (Internal quotation marks omitted.) The court granted the defendant's motion for modification "to the limited extent that the court has based the award of unallocated alimony and child support on the [defendant's] income from self-employment and not his earning capacity," and ordered, inter alia, that "[c]ommencing April 1, 2011, and monthly thereafter, the [defendant] shall pay to the [plaintiff] the sum of $3390.75 as and for periodic unallocated alimony and child support . . . ." The court also found that "the evidence does not support a finding that the [defendant] is in wilful breach of the orders of the court . . . ."[6]

The plaintiff moved to reargue the motion for modification, claiming that the March 1, 2011 hearing concerned only the contempt motion and that neither party presented any argument on the modification motion. The plaintiff asserted that the court's modification order was entered without due process of law and requested "notice and a meaningful opportunity to be heard" on reargument of the motion.

During a conference on May 26, 2011, the court, *Shay, J.*, denied the plaintiff's motion for reargument. Although the court conceded that it "could have been clearer" about the motions it intended to decide after

[6] The plaintiff has indicated that only the court's modification order is the "focus of this appeal."

the March 1, 2011 hearing, the court stated that as a "practical matter" the evidence was the same for both a contempt motion and a modification motion, and that, "as far as this judge is concerned, I took all the evidence. It was all the evidence that I needed. There was a motion for contempt, a motion for modification pending. And I decided them both." The court also rejected the plaintiff's argument that counsel would have made a different evidentiary presentation if the parties had known that the court would be deciding the modification motion after the hearing; the court stated that it "[did not] see what further evidence" could have been presented or "how it would've been different." The court further told the plaintiff's counsel: "I think, you know, part of my function is to make decisions. And, you know, I think I justified my decision. Was I as clear as I could have been? Probably not. You know, I'll admit that." This appeal followed.

The plaintiff claims that the court improperly modified the dissolution judgment without giving the parties adequate notice that it intended to consider and decide the defendant's motion for modification, and that the court thus deprived the plaintiff of her due process rights to prepare and participate fully in an evidentiary hearing concerning modification.[7] We agree.

[7] In his appellate brief, the defendant—who is representing himself in connection with this appeal—addresses not only the plaintiff's due process claim, but also the merits of the court's modification decision and the purported impropriety in the plaintiff's characterization of his relationship with Pomegranate as a "fraudulent scheme." Because we conclude that the court failed to provide adequate notice that it planned to decide the modification motion, we do not reach the merits of the court's decision, and, accordingly, these arguments are largely irrelevant to our discussion here. We do note, however, that at oral argument before this court and in his brief the defendant has attempted to support his position with numerous mischaracterizations of the record in this case. The facts and procedural history as set forth herein accurately reflect the record and proceedings before the trial court; to the extent that the defendant has proposed differing accounts of the underlying proceedings, we reject his interpretation.

We note initially that "[i]t is the settled rule of this jurisdiction, if indeed it may not be safely called an established principle of general jurisprudence, that no court will proceed to the adjudication of a matter involving conflicting rights and interests, until all persons directly concerned in the event have been actually or constructively notified of the pendency of the proceeding, and given reasonable opportunity to appear and be heard . . . in sufficient time to prepare their positions on the issues involved." (Internal quotation marks omitted.) *Leftridge* v. *Wiggins*, 136 Conn. App. 238, 243–44, 44 A.3d 217 (2012).

In keeping with these principles of due process, we have reversed modifications of support orders where the issue of modification was not before the trial court, or where the court did not give adequate notice that it intended to address a modification issue. For example, in *Pritchard* v. *Pritchard*, 103 Conn. App. 276, 928 A.2d 566 (2007), we reversed the modification of a support order where the court "indicated that it was construing the defendant's motion for contempt . . . as a motion for modification," but the contempt motion "may have been withdrawn" and the motion remaining before the court "could not fairly be read as a request for modification of support." Id., 287. We concluded that "none of the parties had notice that the court might . . . modify the support order," and, therefore, that "the court acted in violation of the state's due process rights to be given adequate notice of the issues the court intended to address, and . . . to be given a reasonable opportunity to be heard in sufficient time to prepare a position on the issues involved . . . ." Id., 288.

Similarly, in *Demartino* v. *Demartino*, 79 Conn. App. 488, 496, 830 A.2d 394 (2003), we reversed an order modifying the plaintiff's alimony obligations after finding that the court had "improperly fashioned relief on an issue that was not before it." In *Demartino*, the

parties' judgment of dissolution incorporated an agreement and stipulation requiring, among other things, that the plaintiff pay alimony to the defendant on a weekly basis until the defendant either died or remarried. Id., 490 and n.3. In 2002, after he was discharged from his employment, the plaintiff filed a motion seeking modification or termination of his periodic alimony obligation as of the date of the motion. Id., 491. After a hearing, the court found a substantial change in the parties' circumstances and ordered the plaintiff to pay periodic alimony until December, 2005, when the alimony order would terminate.[8] Id.

On the defendant's appeal, we noted that the plaintiff's motion had not specifically requested the *future* termination of his alimony obligations, and, accordingly, that "[t]he issue of future termination of the alimony award was not before the court." Id., 496, citing *Wingerd* v. *Wingerd*, 3 Conn. App. 261, 487 A.2d 212, cert. denied, 195 Conn. 804, 491 A.2d 1104 (1985). We further stated that the "evidence offered [to the court] was insufficient to permit the court to make a determination concerning the future financial circumstances of the parties," and, therefore, we held that the court abused its discretion in ordering the future termination of the plaintiff's periodic alimony obligations. Id., 497.

In the present case, the court gave no indication to the parties that it planned to consider the defendant's motion for modification before, during or after the March 1, 2011 hearing. To the contrary, the court told

---

[8] The trial court selected December 1, 2005, as the alimony termination date because the defendant would become sixty-five years old and begin receiving pension payments at that time. *Demartino* v. *Demartino*, supra, 79 Conn. App. 495. As we noted, however, "[t]he court did not . . . make a finding of a substantial change precipitating an order for immediate modification, either downward or upward, of alimony. The court also did not order an immediate termination of periodic alimony. In essence, the court applied its present finding of a substantial change in circumstances to support a *future* termination of periodic alimony." (Emphasis in original.) Id.

the parties the exact opposite—it planned to use the hearing to resolve the "unfinished business" from August, 2010, and "finish up" the plaintiff's contempt motion, in what the court described more than once as a "wilfulness hearing" concerning "bona fides" and the defendant's "abilities."[9] Indeed, after hearing argument from both sides regarding what motions the court should consider, the court specifically informed the parties that it would *not* be considering the defendant's modification motion unless "lightning struck" and both parties agreed to put the modification issue before the court. The parties, however, never reached such an agreement. Rather, both the plaintiff and the defendant explicitly limited their arguments to the issue of wilfulness in the context of the contempt motion,[10] and the defendant's counsel even recognized in his closing argument that the court would not be considering modification until an as-yet-unscheduled future hearing. Given the clear statements of the parties and the court, we cannot conclude on this record that the parties had adequate notice that the court intended to decide the defendant's motion for modification after the March 1,

[9] The fact that the court's calendar for the date of the hearing listed only the contempt motion further supports the plaintiff's argument that she did not receive proper notice of the issues the court planned to consider. Although the defendant's counsel mentioned to the case flow coordinator that he thought both motions would be heard by the court on March 1, 2011, there is no indication in the record that the plaintiff's counsel had any knowledge of this conversation or otherwise knew of the defendant's plans to raise the modification motion at the hearing.

[10] Although we cannot presume to know the exact additional issues the parties may have presented if the court had clarified that it planned to consider the defendant's motion for modification at the March 1, 2011 hearing, the plaintiff's briefing on appeal suggests that the plaintiff would have raised, inter alia, arguments and evidence concerning (1) whether the court should consider the defendant's actual earnings or his earning capacity in determining whether to modify the dissolution judgment, (2) the correct interpretation of §§ 3.4 and 3.5 of the parties' separation agreement and (3) the defendant's "intellectual property" income as it affects the defendant's "gross annual earned income" for purposes of the support calculation.

2011 hearing.[11] See, e.g., *Pritchard* v. *Pritchard*, supra, 103 Conn. App. 288. "Because the court acted in violation of the [parties'] due process rights to be given adequate notice of the issues the court intended to address, and, accordingly, to be given a reasonable opportunity to be heard in sufficient time to prepare a position on the issues involved," the modification order cannot stand. Id.

The judgment is reversed only as to the modification of the dissolution judgment and the case is remanded for a hearing on the defendant's motion for modification.

In this opinion the other judges concurred.

---

[11] As the defendant correctly asserts, the fact that he had filed a written motion for modification in advance of the March 1, 2011 hearing distinguishes this case from certain cases cited by the plaintiff, including *Connolly* v. *Connolly*, 191 Conn. 468, 464 A.2d 837 (1983), *Winick* v. *Winick*, 153 Conn. 294, 216 A.2d 185 (1965), and *Osterlund* v. *State*, 129 Conn. 591, 30 A.2d 393 (1943). The mere fact that the defendant filed the modification motion, however, does not change our analysis. Our case law makes plain that due process entitles the parties to fair notice of the issues the court plans to consider. See, e.g., *Leftridge* v. *Wiggins*, supra, 136 Conn. App. 243–44; *Pritchard* v. *Pritchard*, supra, 103 Conn. App. 288. Here, the record reveals that the parties received no such notice with respect to the issue of modification.