******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STEPHANIE SZYMONIK *v.* PETER SZYMONIK
(AC 36301)

Lavine, Mullins and Harper, Js.

*Argued April 5—officially released August 23, 2016*

(Appeal from Superior Court, judicial district of
Hartford, Epstein, J. [dissolution judgment];
Carbonneau, J. [motion for modification]; Bozzuto, J.
[certain orders concerning payment of guardian ad

litem fees].)

*David V. DeRosa*, for the appellant (defendant).

*Adam J. Teller*, for the appellee (intervenor guardian ad litem).

*Opinion*

MULLINS, J. This appeal concerns the court's judgment and orders related to a postjudgment motion for modification of custody filed by the defendant, Peter Szymonik.[1] On appeal, the defendant claims that the trial court improperly: (1) ordered him to pay the postjudgment fees of the guardian ad litem without legislative authorization; (2) characterized the fees as being "in the nature of child support," such that there would be no appellate stay and he, thereafter, could be held in contempt and incarcerated if he failed to pay those fees during the appeal process;[2] and (3) issued new postjudgment financial orders without first holding an evidentiary hearing. We reverse in part and affirm in part the judgment of the trial court; additionally, we dismiss as moot the portion of the defendant's appeal challenging the court's characterization of guardian ad litem fees as being "in the nature of child support."

The following relevant facts and procedural history inform our review. The court rendered a judgment dissolving the defendant's marriage to the plaintiff, Stephanie Szymonik, on April 30, 2008. On May 5, 2009, the parties were granted joint legal custody of their children, with a shared parenting plan.

On June 15, 2012, the defendant filed a postjudgment motion for modification of custody, seeking sole legal custody and primary physical custody of the children. On May 7, 2013, the plaintiff filed a motion for sanctions for alleged egregious litigation conduct, asking the court to order the defendant to pay her attorney's fees and all fees related to the appointment of a guardian ad litem for the children. She also filed a motion for contempt on the basis of the defendant's alleged failure to comply with discovery orders. The court held a hearing on these motions.

At the conclusion of the hearing, the plaintiff and the defendant requested the opportunity to cross-examine each other with regard to their respective financial affidavits. After some discussion, the court told the parties to schedule final argument on the custody matters, and it stated that a separate hearing would be required on the financial matters. The court explained that it wanted to address the custody and child support issues before it decided the financial issues.[3] That subsequent hearing, however, did not occur before the court rendered its judgment on all issues, including financial matters.[4]

In a written memorandum of decision, the court, on October 11, 2013, denied the plaintiff's motions for sanctions and contempt. The court, however, did find a substantial change in circumstances in reference to the defendant's motion for modification of custody, and it issued new orders regarding custody and child support.

The court found that the parties had agreed with the recommendation of the guardian ad litem, Attorney

Rhonda Morra, that they continue to share joint legal custody, with a shared parenting plan that provides that the children's time is divided equally between the parties. The court doubted that these parents effectively and cooperatively could coparent their children,[5] and it agreed with Morra's recommendation that there be instituted a detailed parenting plan. The court stated: "[A]fter struggling with the question of custody for a long time, [the court] now understands the minute and intricate design of [Morra's] recommendations. A strict and detailed parenting plan must be imposed on these parties because of their toxic, irreparable relationship. They cannot be trusted to timely agree on the simplest of decisions in the best interests of their sons. Because of this, in effect, they have abdicated their parental responsibility and ceded it to the family court. Having the court make family decisions is cumbersome, inefficient, costly and time-consuming, but these parents have left the court no other reasonable choice." The court then set forth a detailed parenting plan for the parties.

Notwithstanding the fact that the court had not conducted a separate hearing on financial issues, the court also issued its financial orders. The court ordered the defendant to pay two-thirds of the cost of unreimbursed health care expenses and work related child care expenses. It also ordered the defendant to pay the sum of $200 per week in child support to the plaintiff. The court ordered the defendant to pay attorney's fees in the amount of $7500 to the plaintiff within ninety days of its decision. The court found that Morra's fees were $23,375, and that the plaintiff previously had paid $4400 and the defendant had paid $2300. The remaining balance was $16,675. The court ordered that the defendant pay two-thirds of the remaining balance and that the plaintiff pay one-third of that balance. It also ordered that the parties make immediate arrangements for payment of those fees with Morra.

On October 30, 2013, the defendant filed a motion to reconsider and reargue. In his motion, he asserted, in relevant part, that the court improperly had issued financial orders without affording the parties a promised hearing, which caused the court to make certain inaccurate assumptions, and to ignore relevant clauses of the parties' dissolution judgment. On November 21, 2013, the court denied this motion. On December 9, 2013, the defendant filed an appeal.

On December 11, 2013, the trial court issued an order that the parties' obligation to pay Morra's fees was not stayed by the defendant's filing of an appeal. The court explained that the obligation to pay those fees was not stayed because guardian ad litem fees are "in the nature of child support." Thus, the court ordered the defendant to begin paying $981.60 per month beginning on January 1, 2014. On December 27, 2013, the defendant filed an

amended appeal to include the December 11, 2013 order, but he did not file a motion for review of the court's order that there was no appellate stay because the fees were "in the nature of child support." Thereafter, the court appointed an attorney to represent Morra and ordered the defendant to pay a $2500 retainer for that attorney.

On May 1, 2014, the defendant filed a second amended appeal. This second amended appeal included the court's order appointing an attorney for Morra and ordering that the defendant pay that attorney a retainer.

On October 15, 2014, the trial court issued an order permitting Morra to withdraw as guardian ad litem and granting her permission to file a motion for contempt for the defendant's failure to pay the balance of her fees. Morra then filed a motion for contempt, alleging that the defendant owed her $9627.24. The defendant sought to quash Morra's subpoena in connection with the motion for contempt and to obtain a protective order. On November 4, 2014, the trial court denied the motions to quash and for a protective order.

On November 12, 2014, the defendant filed a motion to stay the proceedings relating to Morra's motion for contempt, which the trial court denied on November 21, 2014. On that date, the court also found the defendant in contempt, in absentia, for failing to pay Morra's fees, and it issued a capias. The court also set a purge amount of $9600.25, which equated to the amount the court found the defendant still owed to Morra.

On December 1, 2014, the defendant filed with this court a motion for review of the trial court's denial of his motion to stay the contempt proceedings.[6] On December 3, 2014, the defendant presented himself to the marshal for service of the capias, and he was presented to the trial court that same day. The trial court ordered the defendant released from custody and continued the matter until the next day. On December 4, 2014, the trial court ordered the contempt proceedings stayed pending the decision of this court on the defendant's motion for review of the trial court's denial of his motion to stay the contempt proceedings.

On December 9, 2014, the defendant filed a third amended appeal, to include the trial court's November 21, 2014 judgment of contempt. On January 28, 2015, this court dismissed the defendant's motion for review of the trial court's denial of his motion to stay the contempt proceedings.

Subsequently, on May 29, 2015, the trial court held a hearing regarding the defendant's contempt. The defendant and Morra then entered into a stipulation in which they agreed that the defendant would pay a purge amount of $5500 for the guardian ad litem fees, that contempt proceedings would be continued to a later date, and that the defendant would "withdraw all appeal

issues involving Attorney Morra or the amount and calculation of her fees . . . ."[7] The defendant then withdrew the third amended appeal, leaving intact the original appeal, as amended by the first and second amended appeals.

A purge review hearing occurred on July 23, 2015. At that hearing, the trial court determined that the defendant substantially had complied with the stipulation. The court, however, found that he had not complied fully with the stipulation because he had not withdrawn the appeal with respect to his claims that his obligation to pay part of Morra's fees improperly had been characterized as being "in the nature of child support," such that the obligation to pay the fees was not subject to the appellate automatic stay. The defendant then filed a fourth amended appeal challenging this decision.

I

On appeal, the defendant first claims that the trial court improperly ordered him to pay a portion of the postjudgment guardian ad litem fees without legislative authorization. We decline to review this claim for two reasons.

First, Morra argues, in relevant part, that the defendant never made this claim before the trial court, and, furthermore, that the defendant submitted proposed orders to the trial court specifically asking that the court order the parties to share equally the fees of the guardian ad litem, thereby recognizing the authority of the court to award such fees. As such, she argues, the defendant cannot now complain about the court's issuance of such fees postjudgment. We agree that a party cannot be permitted to adopt one position at trial and then, when that does not work out to his advantage, adopt a different position on appeal. See *Larobina* v. *McDonald*, 274 Conn. 394, 402, 876 A.2d 522 (2005) ("Our rules of procedure do not allow a [party] to pursue one course of action at trial and later, on appeal, argue that a path he rejected should now be open to him. . . . To rule otherwise would permit trial by ambuscade." [Internal quotation marks omitted.]); *Nweeia* v. *Nweeia*, 142 Conn. App. 613, 620, 64 A.3d 1251 (2013) (party cannot choose one strategy at trial and then another on appeal).

Second, during oral argument before this court, the defendant acknowledged that he is aware that our case law has recognized that General Statutes § 46b-62 permits the trial court to award postjudgment guardian ad litem fees; see, e.g., *Ruggiero* v. *Ruggiero*, 76 Conn. App. 338, 347–48, 819 A.2d 864 (2003) ("[t]he court may order either party to pay the [postjudgment] fees for the guardian ad litem pursuant to . . . § 46b-62, and how such expenses will be paid is within the court's discretion" [footnote omitted]); and that we adhere gen-

erally to the precedent set by this court absent an en banc hearing. See *Boccanfuso* v. *Conner*, 89 Conn. App. 260, 285 n.20, 873 A.2d 208 (noting this court's policy that precedent set by one panel of this court generally should be overruled only after en banc hearing), cert. denied, 275 Conn. 905, 882 A.2d 668 (2005).

Despite acknowledging that our case law recognizes the trial court's authority to award guardian ad litem fees postjudgment, the defendant's counsel stated during oral argument that he would like this court to overrule our prior case law and that he would consider filing a motion requesting en banc consideration of this case. Such motion, however, has not been filed.

Thus, for the foregoing reasons, we decline to review the defendant's claim that the court improperly awarded postjudgment guardian ad litem fees without legislative authorization.

## II

The defendant also claims that the court improperly characterized guardian ad litem fees as being "in the nature of child support," such that there would be no appellate stay during his appeal; see Practice Book § 61-11 (c); and he, thereafter, could be held in contempt and incarcerated if he failed to pay those "in the nature of child support" fees during the appeals process. The defendant relies on *Goldberg* v. *Miller*, 371 Md. 591, 810 A.2d 947 (2002), in support of his argument.

Morra argues that there is no actual case in controversy as to the contempt finding, the authority of the court to award guardian ad litem fees, or the amount or payment of those fees, because the defendant specifically has stated that he is not challenging the contempt finding or the amount of fees awarded, and he voluntarily entered into a stipulation and paid the agreed upon fees. As a result, Morra contends that, as to this claim, there is no practical relief that we can afford the defendant on appeal. We conclude that the defendant's claim regarding the court's order that guardian ad litem fees were "in the nature of child support" and, thus, not subject to an automatic appellate stay is moot. Accordingly, we dismiss this portion of the defendant's appeal.

"Mootness is a question of justiciability that must be determined as a threshold matter because it implicates this court's subject matter jurisdiction. . . . [A]n actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." (Citations omitted; internal quotation marks omitted.) *Wendy V.* v. *Santiago*, 319 Conn. 540, 544–45, 125 A.3d 983 (2015).

Although the defendant entered into a voluntary agreement with Morra and paid her a lesser fee than was owed and agreed to withdraw his third amended

appeal, the defendant, in his reply brief, contends that the issue of whether the court properly considered the payment of postjudgment guardian ad litem fees to be "in the nature of child support" is not moot. He claims that it falls within an exception to the mootness doctrine because it is capable of repetition, yet evading review. See *Loisel* v. *Rowe*, 233 Conn. 370, 378–87, 660 A.2d 323 (1995) (discussing mootness doctrine and capable of repetition, yet evading review exception). We disagree that this exception applies here.

"To qualify under the capable of repetition, yet evading review exception, three requirements must be met. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." (Internal quotation marks omitted.) *Wendy V.* v. *Santiago*, supra, 319 Conn. 545–46.

The defendant contends that the issue of the trial court's defining guardian ad litem fees as "in the nature of child support" meets each of these requirements. He also argues that the judges of the Superior Court routinely apply this construction to the payment of guardian ad litem fees and that, therefore, this is a matter of great public importance.[8]

"The first requirement of the foregoing test reflects the functionally insurmountable time constraints present in certain types of disputes. . . . Paradigmatic examples are abortion cases and other medical treatment disputes. . . . The basis for the first requirement derives from the nature of the exception. If an action or its effects is not of inherently limited duration, the action can be reviewed the next time it arises, when it will present an ongoing live controversy. Moreover, if the question presented is not strongly likely to become moot in the substantial majority of cases in which it arises, the urgency of deciding the pending case is significantly reduced. Thus, there is no reason to reach out to decide the issue as between parties who, by hypothesis, no longer have any present interest in the outcome." (Citation omitted; internal quotation marks omitted.) Id., 546.

The defendant's claim fails to meet the first requirement and, therefore, does not fall within the capable of repetition, yet evading review exception to the mootness doctrine. The effect of the challenged action,

namely, the court holding that guardian ad litem fees are in the nature of child support and, therefore, not subject to the automatic stay, is not of inherently limited duration, such that the issue could not be reviewed the next time it arises, when it will present an ongoing live controversy. Despite the defendant's argument to the contrary, it is not likely that this issue would become moot in the substantial majority of cases in which it might arise. If, as both parties here contend, the judges of our Superior Court routinely are defining guardian ad litem fees in this manner, thereby putting the payment of these fees on an equal footing with the litigants' child support obligations and forcing them to pay the fees immediately or face contempt proceedings, such litigants have avenues for relief under our rules of practice. The party wishing to contest the immediate payment of those fees could file a motion for review pursuant to Practice Book §§ 61-14 and 66-6, or the party could request, for example, a discretionary stay from the trial court pursuant to Practice Book § 61-12, and then could file a motion for review pursuant to §§ 61-14 and 66-6 if the discretionary stay was denied.[9]

Accordingly, because the question presented by the defendant will not evade review, the first requirement is not met, and the case does not fall within the capable of repetition, yet evading review exception. Therefore, there is no practical relief we can afford the defendant on this claim, and this portion of his appeal is dismissed.

### III

The defendant next claims that the court violated his right to due process by issuing new postjudgment financial orders without first holding an evidentiary hearing. He contends that both he and the plaintiff had requested a hearing on the financial issues and that the court told them that it needed to address the parenting issues before considering the financial issues. The court then told them to schedule a hearing with the caseflow coordinator. The defendant then contends that "[i]nstead of having a hearing, the court issued its memorandum of decision . . . without input from the parties on the financial orders. . . . It continued an order of shared custody between the parties and did not alter that order, but then ordered payment of attorney's fees by the defendant to the plaintiff, ordered the [guardian ad litem] fees split [two-thirds] to the defendant and [one-third] to the plaintiff,[10] and deviated from the child support guidelines and ordered the defendant to pay the plaintiff $200 per week in child support instead of $100 a week even though the parties had a shared custody arrangement."

The following additional facts are necessary for our consideration of this issue. Following the guardian ad litem's testimony on June 17, 2013, the court asked the parties: "Where do we go from here?" The plaintiff's counsel responded, in part, that he wanted an opportu-

nity to cross-examine the defendant on his financial affidavit. He argued: "The collateral issues, Your Honor, which don't really have to do with the children at this point. They really have—[the] financial issues still need to be addressed fairly, and I know Your Honor said that he would do that, and I expect that certainly the court will address those issues. . . ." The defendant's attorney stated that he would like the opportunity to cross-examine the plaintiff on her financial affidavit, as well.

The court stated that it needed to determine "how we're going to parent these children in their best interest, and then, and only then, can we address the financial issues appropriately and properly." The court then stated that counsel should schedule closing argument for a short calendar day in approximately two weeks. It also stated: "If you really want to cross-examine the parties about their affidavits, you will need to schedule at least an hour . . . and I would give you each a half an hour of that to go through the financials."

The plaintiff's attorney stated: "Your Honor, that sounds very fair. I think what you're saying is that anyway you won't be able to fashion the financial orders until you're done with the custody piece. There's no sense in—and we want to have the issues with [the] children resolved [as soon as possible] and certainly don't want to defer any of those issues and the court's orders until after all this other stuff—this ancillary stuff is done." The court then reiterated that the parties should schedule final argument on the custody issues and that "we'll take the next step from that point as to what we do with financial orders." The defendant claims that his right to due process was violated by the lack of a hearing on the financial orders. We agree.

"It is a fundamental tenet of due process that no court will proceed to the adjudication of a matter involving conflicting rights and interests, until all persons directly concerned in the event have been actually or constructively notified of the pendency of the proceeding, and given reasonable opportunity to appear and be heard . . . in sufficient time to prepare their positions on the issues involved." (Internal quotation marks omitted.) *Valentine* v. *Valentine*, 149 Conn. App. 799, 803–804, 90 A.3d 300 (2014); see *Styrcula* v. *Styrcula*, 139 Conn. App. 735, 745, 57 A.3d 822 (2012). "In keeping with these principles of due process, we have reversed modifications of support orders where . . . the court did not give adequate notice that it intended to address a modification issue." *Styrcula* v. *Styrcula*, supra, 745.

In *Styrcula*, this court held that the trial court had violated the plaintiff's due process rights when it entered an order modifying the defendant's alimony and child support obligation following a contempt hearing without giving the parties notice and an opportunity to be heard on the merits of the defendant's modification motion. Id., 744–48. During the contempt hearing, the

trial court had informed the parties that the hearing was to resolve only issues involving the alleged wilfulness underlying the contempt, and it stated that it would not be considering the defendant's modification motion during that hearing. Id., 747–48. The parties limited their arguments to the alleged wilfulness underlying the contempt allegation, and the defendant's attorney "even recognized in his closing argument that the court would not be considering modification until an as-yet-unscheduled future hearing." Id., 747. The court, however, in violation of the right to due process, rendered judgment on both the contempt motion and the modification motion. Id., 748.

In the present case, there is no indication in the record that final arguments were given in the weeks following the evidentiary hearing on the motion for modification of custody, that the parties were given the promised opportunity to cross-examine each other on their financial affidavits, or that the parties waived their requests for a hearing on financial matters. The defendant contends that no hearing was held and that the court, instead, issued a memorandum of decision on October 11, 2013. In response to the issuance of the court's decision, the defendant, on October 30, 2013, filed a motion for reargument and reconsideration, requesting, in part, a hearing on the financial matters and an opportunity to cross-examine the plaintiff. The court summarily denied his motion.

The record does not indicate whether the parties failed to schedule a hearing or the reason that a hearing was not held. It does appear from the record, however, that the parties each requested an opportunity to cross-examine the other on their financial affidavits and that the court indicated that a hearing would be permitted, but only after it determined the custody and parenting issues. That hearing appears not to have taken place before the court issued a decision on all matters. We conclude, therefore, that the court acted in violation of the parties' due process rights to be given adequate notice of the issues that the court intended to address in its judgment, and, accordingly, to be given a reasonable opportunity to be heard in sufficient time to prepare a position on the issues addressed in that judgment. See id., 748. Consequently, the financial orders cannot stand and the matter must be remanded for a hearing on financial issues.[11]

The portion of the appeal challenging the court's characterization of the fees for the guardian ad litem as "in the nature of child support" is dismissed. The judgment is reversed as to the relevant financial issues, and the case is remanded for a hearing on those issues; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] Although the plaintiff, Stephanie Szymonik, appeared and participated in this matter before the trial court, she is nonappearing in this appeal. The

guardian ad litem, Attorney Rhonda Morra, filed a motion to intervene in this appeal for purposes of the defendant's claims regarding her fees, which we granted.

[2] The defendant has informed this court repeatedly that he is not challenging the trial court's contempt finding for his failure to pay Morra's fees or the amount of the fees awarded to her.

[3] Specifically, the following colloquy occurred after counsel each indicated a desire to cross-examine on financial affidavits:

"The Court: So, I would like to hear final argument from each of you and that can be done on a calendar day. Your clients are obviously invited to be here. The [guardian ad litem] would not have to be in here. Obviously, you're all welcome, but I understand that you have lives too, and you may want to earn a living at some point. So, I leave that to all of you. Counsel have to be here anyway on various times and dates . . . [so] that can be worked out.

"It will not be next week. I will not be available, but, perhaps, in two weeks we can bring you back on a calendar day for no more than about half an hour to forty-five minutes. We can start at 9:30 perhaps if you coordinate that with [caseflow] so I have no pretrials that morning, and we can, perhaps, then finish up, and you would have time to prepare the financial affidavits and so forth.

"If you really want to cross-examine the parties about their affidavits, you will need to schedule at least an hour I . . . think, and I would give you each a half an hour of that to go through the financials.

"[The Plaintiff's Counsel]: Your Honor, that sounds very fair. I think what you're saying is that . . . you won't be able to fashion the financial orders until you're done with the custody piece. There's no sense in—we want to have the issues with children resolved [as soon as possible] and certainly don't want to defer any of those issues and the court's orders until after all this other stuff . . . is done.

"The Court: So, schedule the final argument. I would like the benefit of both of your argument[s]. All parties are welcome to attend that if you wish. They are not required. . . . So, schedule with [caseflow] first. We'll take the next step from that point as to what we do with financial orders."

[4] There also is no indication in the record as to whether final argument occurred on the issues of custody and child support; there is nothing indicated on the docket sheet and no transcript of such argument has been provided.

[5] As described by the trial court: There is "a pattern of 'engagement' between these parents. No issue, no fact, no grievance asserted by one is too small to be controverted by the other."

[6] We note that this motion was filed under a separate appellate docket number but we discuss it here insofar as it is relevant to the matters presently before this court.

[7] Specifically, the stipulation provided:

"The Movant, Rhonda Morra, Esq., and the Defendant, Peter Szymonik, agree to the following with regard to the court's finding of contempt of November 21, 2014:

"1. The defendant shall pay the sum of $5500 by 5:00 PM on Friday, June 5, 2015. All payments shall be made by bank check payable to Attorney Adam J. Teller as trustee and delivered to him or to his office at 33 Connecticut Boulevard, East Hartford, Connecticut.

"2. The defendant shall withdraw all appeal issues involving Attorney Morra or the amount and calculation of her fees as [guardian ad litem] by close of business on June 5, 2015. Issues not involving Attorney Morra or her fees may remain pending.

"3. The defendant shall file a stipulation for dismissal with prejudice of any and all federal actions he has against Attorney Morra and Attorney Adam Teller, not later than close of business June 5, 2015. Attorney Teller shall draft the stipulation and forward the same to defendant's attorney for signature by June 2, 2015.

"4. The contempt shall be continued to a date after June 5, 2015, to be determined by the court.

"5. Time shall be of the essence as to all dates specified herein. Upon receipt of payment and completion of the requirements of paragraph 2 and 3 . . . in timely manner, counsel for Attorney Morra shall file by June 9, 2015, a notice of satisfaction of the terms of this stipulation and waiving the remainder of her fees and costs, and the contempt shall be deemed purged. Subject to the court's approval today, upon the filing of the notice, the parties shall be excused from appearance and the contempt shall be deemed concluded and purged."

[8] Morra contends that the judges of the Superior Court "have routinely made orders for the payment of [guardian ad litem] fees and found or considered that such fees [are] in the nature of 'child support' . . . [and that] [t]here appears to be no Connecticut Superior Court or appellate decisions expressing an opposing view."

Although we consider this issue to be moot in this particular case, we, nonetheless, acknowledge that the "in the nature of child support" construction of guardian ad litem fees raises legitimate concerns.

[9] We refer to these sections of our rules of practice merely as examples of possible actions that a litigant could take. They certainly are not meant to be exhaustive, nor are we concluding that these motions necessarily would be successful if filed under the particular circumstances of any given case.

[10] We note that the propriety of the allocation of the fees for the guardian ad litem is a nonissue in this case. The defendant initially had agreed to pay one-half of those fees, but when the court ordered him to pay two-thirds, he objected. After further proceedings and a contempt finding, the defendant entered into a voluntary agreement to withdraw his claims regarding the contempt and the fee, and, in return, Morra accepted a reduced fee from the defendant. See also parts I and II of this opinion.

[11] See footnote 3 of this opinion.