THERESA N. CURTIS *v.* DAVID L. CURTIS
(AC 32983)

Gruendel, Robinson and Borden, Js.

Argued January 11—officially released April 17, 2012

*David L. Curtis*, pro se, the appellant (defendant).

*Theresa N. Flatley*, pro se, the appellee (plaintiff).

*Opinion*

ROBINSON, J. The defendant, David L. Curtis, appeals from the judgment of the trial court, rendered following a hearing on a motion for contempt, ordering him to reimburse the plaintiff, Theresa N. Curtis, now known as Theresa N. Flatley, for a portion of certain child care expenses. The defendant claims that the court (1) violated his right to procedural due process by not allowing him to call the plaintiff as a witness, (2) improperly ordered reimbursement of the child care expenses because the plaintiff failed to establish that those expenses met the criteria set forth in § 46b-215a-2b of the Regulations of Connecticut State Agencies and (3) improperly failed to apply the doctrine of unclean hands. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The parties were married in May, 1997. They have two minor children from the marriage: a daughter born in November, 1997, and a son born in August, 2000. The plaintiff filed an action for dissolution

of marriage in October, 2002. The parties entered into a stipulated agreement regarding custody and visitation on February 14, 2003, in which they agreed to share joint legal custody of their children, with the plaintiff maintaining primary physical custody subject to specified visitation with the defendant. The parties executed a separation agreement on December 24, 2003, that incorporated the terms of their custody and visitation agreement. On February 11, 2004, the court rendered a judgment of dissolution of marriage that incorporated by reference the separation agreement. The separation agreement provided, among other things, that the defendant would pay the plaintiff $2500 per month in unallocated alimony and child support for five years.[1] Thereafter, he agreed to pay child support in accordance with child support guidelines.

On April 3, 2009, the plaintiff filed a motion indicating that the defendant's responsibility to pay unallocated child support and alimony had ended on February 11, 2009. The plaintiff sought a new order requiring the defendant to pay child support in accordance with the child support guidelines retroactive to February 11, 2009. The ensuing litigation between the parties resulted in the filing of numerous other motions with the court. On February 11, 2010, the parties reached a comprehensive agreement regarding their various disputes, and the court issued an order in accordance with the parties' agreement that resolved all outstanding motions, including the plaintiff's motion for a child support order.[2] One of the additional orders issued by the court—and the order relevant to the present appeal—

---

[1] In May, 2007, the parties, after several months of litigation, agreed to modify the alimony and child support payment upward to $3000 per month.

[2] As to child support, the court ordered the defendant to pay the plaintiff $1000 per month until July 1, 2010, at which time support would increase to $1100 per month. Because the court's child support order was made retroactive to February 11, 2009, the amount the defendant was ordered to pay included a portion to satisfy the resulting arrearage.

concerned child care expenses. The order issued by the court provides as follows: "In re: child care expense[s]: The defendant shall pay 59 [percent] and the plaintiff 41 [percent]."

On August 4, 2010, the plaintiff filed a motion for contempt claiming that the defendant refused to pay his 59 percent share of child care expenses that had been incurred since the court's February 11, 2010 order. The plaintiff also claimed that the defendant was not providing her with certain documentation concerning insurance payments and that he frequently was late in sending his child support payments.

The parties appeared for a hearing on the plaintiff's motion for contempt on November 29, 2010. At that time, the parties, with the help of a family relations officer, stipulated to a resolution of their disputes regarding the insurance documents and child support arrearage issues, but they could not come to an agreement regarding the child care expenses. The court made the parties' partial stipulation an order of the court.[3] The court then proceeded to consider the issue of the disputed child care expenses.

The court heard argument from both of the self-represented parties. The plaintiff explained to the court that she works full time as a personal assistant and that the child care expenses currently at issue consist of payments that she had made to three individuals for baby-sitting services. The first individual was Martha Pandora, a woman who worked with the plaintiff's boyfriend as a landscaper. The plaintiff paid Pandora a flat rate of $200 per week for sixteen weeks to look after

---

[3] The court later entered an additional order requiring the defendant to make his child support payment by the fifth day of the month going forward, noting: "[I]f you fail to make that, and there is a history, [the plaintiff] can renew her motion for contempt, and I will have no recourse but to send you to jail."

the children on weekdays during the school year between the time that the children arrived home from school until the plaintiff returned home from work. As part of that flat rate, Pandora agreed to watch the children on days when the children could not attend school, such as when they were ill or there was a snow day. She also would drive the children to after school activities if necessary. When Pandora resumed landscaping work during the summer, the plaintiff hired the second individual, a college student whom she had known since he was a child, to watch the children during the school vacation. The plaintiff paid him a total of $1764.50 for his services over the course of the summer. After the children returned to school in the fall, the plaintiff did not resume using Pandora or another regular baby-sitter to watch the children after school. Instead, the children came to her place of employment, an arrangement that was not sanctioned by her employer. During that time, she twice paid a third individual, a former neighbor, to watch the children when they could not attend school, once because of illness and once when there was no school. The plaintiff told the court that she would like to be able to rehire Pandora or to find someone else to watch the children at the house but had not done so to date.

The defendant stipulated on the record that he had entered into the agreement concerning child care expenses and that he is responsible for 59 percent of all child care services. He claimed that his issue with making the payments sought by the plaintiff was that the plaintiff had not notified him of the services in advance and never provided him with an opportunity to approve the service providers. He also suggested that the services may not have been necessary. The defendant argued that the plaintiff should have consulted with him before hiring any of the baby-sitters because he had joint legal custody of the children and

the parties' custody and visitation agreement stated that the parties would consult on important matters concerning the children. He also stated that he believed that the parties' stipulated agreement regarding child care expenses was intended to be limited to those times when the plaintiff needed to be away overnight, such as on business trips, and did not apply to after school care. The trial court responded on the record that there were no such conditions stated in the court's February 11, 2010 order, which the defendant had agreed to, and that the term "child care" expenses as used in the order reasonably could not be read as narrowly as the defendant suggested.

Ultimately, although the court did not find the defendant in contempt, it ordered the defendant to pay the plaintiff $3044.10, which the court determined to be 59 percent of the $5159.50 in child care expenses the plaintiff had paid.[4] The defendant argued that he would have a difficult time making one lump sum payment, so the court ordered the defendant to pay $1000 by January 31, 2011, another $1000 by the end of February, 2011, and the $1044 balance by the end of March, 2011. The court also ordered that, in the future, if the plaintiff was going to obtain a baby-sitter, she must provide the defendant with the name of the baby-sitter at least two weeks in advance, except in emergency situations such as when a child woke up sick on a school day. Finally, the court ordered that, if the plaintiff was going to be away on a business trip, she should give the defendant the opportunity to act as the primary caregiver before hiring a baby-sitter. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court violated his constitutional right to procedural due process when it

---

[4] During the hearing, the plaintiff provided the court with copies of cancelled checks for all claimed payments.

allegedly refused to allow him to call the plaintiff as a witness at the hearing on the motion for contempt. In his brief, the defendant states that the court heard conflicting arguments from the parties regarding whether he had ever received bills or other documentation regarding the child care expenses at issue and that allowing the defendant to examine the plaintiff would have been helpful in establishing what type of documentation was sent and also when, how, how often and on what dates the plaintiff sent documentation. The plaintiff responds that the defendant's due process claim lacks merit because he never actually attempted to call the plaintiff as a witness but only threatened to do so, and, alternatively, any claimed constitutional violation is unreviewable on appeal because the defendant never raised such a claim before the trial court and has failed to properly obtain review of the unpreserved claim. We agree with the plaintiff.

"The issue of whether the court violated the defendant's procedural due process rights is a question of law over which this court's review is plenary. . . . Inquiry into whether particular procedures are constitutionally mandated in a given instance requires adherence to the principle that due process is flexible and calls for such procedural protections as the particular situation demands. . . . Due process . . . is not a technical conception with a fixed content unrelated to time, place and circumstances." (Citations omitted; internal quotation marks omitted.) *GMAC Mortgage Corp.* v. *Glenn,* 103 Conn. App. 264, 273–74, 931 A.2d 290 (2007).

Our review of the transcript of the November 29, 2010 hearing reveals that the court let each side present his or her case regarding the motion for contempt. Neither party presented witnesses. At no time during the proceeding did the defendant clearly ask the court for permission to call witnesses or, more specifically, to

call the plaintiff as a witness. At one point in the hearing, during an exchange between the parties about the extent to which the plaintiff had an obligation to consult with the defendant about whom she hired to watch their children, the following exchange occurred:

"[The Defendant]: Your Honor, relative to these three child care providers, one was the best friend next door neighbor. That is not hiring a professional at an arm's length—someone who I think we can both agree has severe mental health issues, and we can go there if we have to, and I will put [the plaintiff] on the stand, and I will interview her—

"The Court: No, you will not.

"[The Defendant]: —about Ms. Ru—thank you. Well, I would if you'd like me to—

"[The Plaintiff]: Your Honor—

"[The Defendant]:—about Ms. Russ' qualifications.

"The Court: This is irrelevant."

Contrary to the argument made by the defendant in his brief, in which he suggests that the court denied him permission to call the plaintiff as a witness concerning proper notice and documentation of the relevant child care expenses, we read the referenced colloquy as merely indicating a willingness on the part of the defendant to question the plaintiff, not as to notice or documentation, but regarding the qualifications of one of the service providers. The defendant, by stating, "I will interview her" and "if you'd like me to," elected to leave to the court's discretion whether it wanted him to question the plaintiff on that topic. The court responded in the negative because it found that the inquiry was irrelevant to the issue that was currently before it. Accordingly, we must agree with the plaintiff that the defendant's due process rights were never

implicated, certainly not in the fashion asserted on appeal, and, therefore, his claim lacks merit.

Even if we were to accept that the aforementioned exchange between the defendant and the court constituted the court's denial of an affirmative request by the defendant to call the plaintiff as a witness so as potentially to implicate the defendant's right to procedural due process, we nevertheless would not review the defendant's claim on the merits because the defendant never preserved his procedural due process claim before the trial court and, further, failed to ask this court to review his unpreserved constitutional claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). See *Liberti* v. *Liberti*, 132 Conn. App. 869, 873, 37 A.3d 166 (2012) (party may prevail on unpreserved constitutional claims provided that party affirmatively seeks *Golding* review).

Here, the constitutional claim clearly was not preserved. The defendant did not object on the record or suggest to the court in any way, either during the hearing or by motion following the hearing, that the court had acted unfairly or violated his due process rights. To the contrary, a review of the transcript reveals that, following the previously quoted exchange, the defendant proceeded with his argument without further comment regarding examination of the plaintiff, and he never again raised the issue until he filed the present appeal.

It is axiomatic that "to prevail on an unpreserved constitutional claim, appellants must affirmatively request *Golding* review and bear the burden of establishing that they are entitled to appellate review of their unpreserved constitutional claims. . . . Merely raising and analyzing a claim of constitutional magnitude . . . does not constitute an affirmative request for *Golding* review." (Citation omitted; internal quotation marks

omitted.) *Balaska* v. *Balaska*, 130 Conn. App. 510, 520, 25 A.3d 680 (2011). In his brief, the defendant does not acknowledge that his constitutional claim is unpreserved, and he does not ask this court for review of his claim under *Golding*.[5] Accordingly, even if the defendant had raised a viable due process claim, we would decline to review the unpreserved claim.

## II

The defendant next claims that the court's order requiring him to reimburse the plaintiff for child care expenses was clearly erroneous and not based on the evidence presented at trial because the plaintiff failed (1) to establish that the child care expenses at issue satisfied certain criteria set forth in § 46b-215a-2b (h) (2) (A) of the Regulations of Connecticut State Agencies and (2) to prove that she had provided the defendant with documentation he claims was necessary for reimbursement. We do not find the defendant's arguments persuasive and agree with the plaintiff that the court properly exercised its broad discretion in reaching its decision in this matter.

"Our Supreme Court repeatedly has stated that judicial review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the [trial] court correctly applied the law and could reasonably have concluded as it did. . . . Our function in reviewing such discretionary decisions is to determine whether the decision of the trial court was clearly erroneous in view of the evidence

---

[5] Not only does the defendant fail to cite *Golding* in his brief, he fails to cite any case law or to otherwise provide any real substantive legal analysis that would support his due process argument. "Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failing to brief the issue properly." (Internal quotation marks omitted.) *In re Sarah S.*, 110 Conn. App. 576, 590, 955 A.2d 657 (2008). Because we dispose of the defendant's claim on other grounds, however, we need not reach whether the defendant also inadequately briefed his claim.

and pleadings in the whole record. . . . With respect
to the financial awards in a dissolution action, great
weight is given to the judgment of the trial court because
of its opportunity to observe the parties and the evi-
dence. Moreover, the power to act equitably is the key-
stone to the court's ability to fashion relief in the infinite
variety of circumstances which arise out of the dissolu-
tion of a marriage. . . . For that reason, we allow every
reasonable presumption . . . in favor of the correct-
ness of [the trial court's] action. . . . Notwithstanding
the great deference accorded the trial court in dissolu-
tion proceedings, a trial court's ruling . . . may be
reversed if, in the exercise of its discretion, the trial
court applies the wrong standard of law." (Internal quo-
tation marks omitted.) *Jungnelius* v. *Jungnelius*, 133
Conn. App. 250, 261–62, 35 A.3d 359 (2012).

In claiming that the court's reimbursement order was
clearly erroneous, the defendant first suggests that the
plaintiff failed to meet an evidentiary burden of estab-
lishing that the child care expenses for which she sought
reimbursement satisfied certain criteria set forth in
§ 46b-215a-2b (h) (2) (A) of the Regulations of Connecti-
cut State Agencies. We are not persuaded that such a
burden existed.

Section 46b-215a-2b (h) (2) (A) of the Regulations of
Connecticut State Agencies is part of the state's child
support guidelines. The guidelines, as a whole, are used
by the courts "to determine the current support, health
care coverage and child care contribution components
of all child support awards within the state . . . ."
Regs., Conn. State Agencies § 46b-215a-2b (a) (1). Sec-
tion 46b-215a-2b (h) provides guidance to the court in
determining the child care contribution portion of a
child support order. Section 46b-215a-2b (h) (2) (A)
provides in relevant part: "Child care costs shall qualify
for a contribution from the noncustodial parent only

to the extent that they: (i) are reasonable, (ii) are necessary to allow a parent to maintain employment, (iii) are not otherwise reimbursed or subsidized, and (iv) do not exceed the level required to provide quality care from a licensed source." The defendant argues that the plaintiff was required to establish at the hearing that the expenses for which she sought reimbursement were reasonable and did not exceed the level required to provide quality care from a licensed source.

The defendant, however, has cited no authority, nor have we found any, to support his claim that the plaintiff, in prosecuting a motion for contempt, had an evidentiary burden to satisfy criteria set forth in the state's child support guidelines. It is the court's duty in fashioning support orders to consider the child support guidelines under appropriate circumstances, not an evidentiary burden to be borne by the parties. Further, in the present case, the parties were not before the court to establish or to modify a child support order under which circumstance the guidelines might be applicable. Rather, they were before the court for consideration of whether the defendant wilfully had failed to comply with an existing child support order of the court, an order in which the defendant admits he agreed to pay 59 percent of child care expenses.

The defendant never mentioned § 46b-215a-2b (h) (2) (A) of the Regulations of Connecticut State Agencies or the child support guidelines generally to the trial court at the hearing. To the extent that the defendant is arguing that the court failed to consider whether the expenses were reasonable under the circumstances, the court heard the defendant's arguments that there were less costly alternatives that the plaintiff could have explored, but ultimately the court appears to have rejected those arguments. The court never expressly stated the basis for its ruling in its oral decision, and

the defendant never asked for an articulation. See *Kaczynski* v. *Kaczynski*, 294 Conn. 121, 129–30, 981 A.2d 1068 (2009) (claim of error on appeal cannot be predicated on assumption court acted erroneously, and in absence of articulation, we presume court undertook proper analysis of law and facts and acted properly in rendering judgment).

The defendant also argues that the court's decision was clearly erroneous because the plaintiff failed to prove that she had provided the defendant with bills or cancelled checks for the child care expenses. In support of this argument, the defendant references a Superior Court case in which the court refused to hold a defendant in contempt for failing to pay certain child care expenses because the plaintiff in that case had never properly submitted the expenses to the defendant for payment.[6] In the present case, the defendant was not held in contempt, so it is unclear how the case cited by the defendant is applicable. Whether or not the defendant had proper notification of the expenses might have relevance to whether the defendant wilfully violated the court's order requiring him to pay a percentage of child care expenses. It has little bearing, however, on whether the court ultimately should require him to make payments in accordance with the order. Here, the plaintiff claimed that she, in fact, sent documentation regarding the child care expenditures to the defendant, and she provided the court with copies of the documentation she claims she had sent. The defendant claimed to the contrary that he never received the documentation. Again, as noted previously, the court's decision did not contain the factual and legal basis for its ruling, and

---

[6] The defendant claims to quote from a decision in *O'Malley* v. *O'Malley*, but provides no citation. The table of authorities lists a Superior Court case from the judicial district of Stamford-Norwalk, *O'Malley* v. *O'Malley*, with docket number FA-98-0167647. Our research does not reveal any published or unpublished decision in that matter, however, that contains the language quoted in the defendant's brief.

the defendant never sought an articulation. It is possible that the court chose to believe the plaintiff's version of events over the defendant's or the court may have taken the dispute over notification into consideration in deciding not to hold the defendant in contempt of court. Having thoroughly reviewed the transcript of the hearing on the motion for contempt as well as the pleadings and the record as a whole, and given our strong presumption in favor of the correctness of the court's action in dissolution proceedings, we conclude that the court reasonably could have reached the decision it did and that the defendant has failed to show that the court's decision was clearly erroneous and not based on the evidence presented.

## III

The defendant's final claim is that the court should have dismissed the motion for contempt on the basis of the unclean hands doctrine. "The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue. . . . For a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with clean hands. . . . The clean hands doctrine is applied not for the protection of the parties but for the protection of the court. . . . It is applied . . . for the advancement of right and justice. . . . The party seeking to invoke the clean hands doctrine to bar equitable relief must show that his opponent engaged in wilful misconduct with regard to the matter in litigation. . . . The trial court enjoys broad discretion in determining whether the promotion of public policy and the preservation of the courts' integrity dictate that the clean hands doctrine be invoked." (Internal quotation marks omitted.) *Emigrant Mortgage Co.* v. *D'Agostino*, 94 Conn. App. 793,

804, 896 A.2d 814, cert. denied, 278 Conn. 919, 901 A.2d 43 (2006).

The defendant claims that the plaintiff had unclean hands because she allegedly violated the parties' custody and visitation agreement by failing to inform him of the child care services in advance and to provide him with any documentation relating to such services. The plaintiff argues that we should not consider the defendant's claim because he failed to raise the unclean hands doctrine before the trial court and cannot do so for the first time on appeal, and, in any event, she never violated the parties' agreement as alleged.

We agree with the plaintiff that the defendant's claim cannot be reviewed because he never raised the unclean hands doctrine before the trial court either before, during or after the hearing on the motion for contempt. See *McBurney* v. *Cirillo*, 276 Conn. 782, 823 n.31, 889 A.2d 759 (2006), overruled in part on other grounds by *Batte-Holmgren* v. *Commissioner of Public Health*, 281 Conn. 277, 284–89, 914 A.2d 996 (2007). It is well settled that this court cannot review a claim that is "advanced for the first time on appeal and not raised before the trial court" as any such review would amount to "a trial by ambuscade of the trial judge." *Musolino* v. *Musolino*, 121 Conn. App. 469, 477, 997 A.2d 599 (2010). Because the defendant did not make his unclean hands argument to the trial court, we decline to afford it review on appeal.

The judgment is affirmed.

In this opinion the other judges concurred.