******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# AMY A. DAVIS *v.* ALEXANDER F. DAVIS, SR.
## (AC 41360)

DiPentima, C. J., and Elgo and Moll, Js.*

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court from certain postjudgment rulings of the trial court, claiming, inter alia, that the court improperly calculated his child support arrearage in violation of statute (§ 46b-224) and granted the plaintiff's motion to modify his alimony obligation without first providing him notice that it would act on the motion. The parties had filed a litany of postjudgment motions between April, 2016 and December, 2017, that were either repeatedly continued or not acted on by the trial court. Thereafter, the court in January, 2018, issued an order notifying the parties that it would address all pending motions on a certain date in February, 2018. *Held*:

1. The defendant received adequate notice in satisfaction of his right to due process that the trial court might dispose of the plaintiff's motion for modification of alimony at the February, 2018 hearing: the January, 2018 order unambiguously stated that all pending motions were to be addressed at the February, 2018 hearing, the court had notified the parties at a previous hearing that the issue of alimony was to be addressed with all the other pending motions, at no point did the court affirmatively state that it would not rule on the motion for modification, and nothing in the record suggested that the defendant was without notice or that his ability to present evidence or to cross-examine the plaintiff was hindered; moreover, at no point did the defendant state his surprise or express the need for more time to present evidence, the record having suggested that he argued his position before the court and attacked the substance of the plaintiff's financial affidavit she presented in support of her motion.

2. The defendant could not prevail on his claim that the trial court improperly ordered him to reimburse the plaintiff for her expenses related to fixing the septic system at the marital residence, which was based on his assertion that the court abused its discretion by failing to consider the plaintiff's conduct relative to his efforts to make the repairs himself; the court acted well within its discretionary authority in ordering reimbursement, as the defendant was obligated under the dissolution judgment and a prior court order to maintain the residence until it was sold, there was no dispute that the septic system required repairs due to recurring problems, the court plainly considered the arguments of both parties and the evidence proffered in rendering its decision, and the defendant's unpreserved claim that the court failed to apply the unclean hands doctrine was without merit, as the defendant did not raise that doctrine with the court, which considered his argument that the plaintiff allegedly prevented him from accessing the septic system and was entitled to broad discretion in deciding whether to apply the unclean hands doctrine.

3. The trial court improperly failed to apply § 46b-224 in calculating the defendant's child support arrearage, the court's prior transfer of custody from the plaintiff to the defendant having suspended his child support obligation under § 46b-224 until the child was returned to the plaintiff's custody; the court improperly refused to deduct from the arrearage the amount for the period of time that the child was in the defendant's custody, as it appeared that the court refused to credit that time because the defendant had not filed a motion for modification of child support, § 46b-224 plainly required that a court order changing custody shall operate to suspend a child support order, and because the court made no finding as to the precise period of time that the child was in the defendant's custody, that issue had to resolved on remand.

Argued February 6—officially released September 15, 2020

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of New Britain and tried to the court, *Hon. Edward J. Dolan*, judge trial referee; judgment dissolving the marriage and granting certain other relief; thereafter, the court, *Abery-Wetstone, J.*, granted the plaintiff's motion to modify alimony and issued an order related to certain expenses, and the defendant appealed to this court. *Reversed in part*; *further proceedings*.

*David V. DeRosa*, for the appellant (defendant).

*Amy A. Davis*, self-represented, the appellee (plaintiff).

*Opinion*

ELGO, J. In this postdissolution matter, the defendant, Alexander F. Davis, Sr., appeals from a number of postdissolution decisions by the trial court in favor of the plaintiff, Amy A. Davis. On appeal, the defendant claims that the court (1) improperly granted the plaintiff's postjudgment motion to modify alimony without providing sufficient notice in violation of his right to due process, (2) improperly ordered the defendant to reimburse the plaintiff for expenses related to septic system repairs at the marital residence, and (3) abused its discretion under General Statutes § 46b-224 by calculating the defendant's outstanding child support obligations without crediting the time that the minor child was in his custody. We agree with the defendant's third claim and, accordingly, affirm in part and reverse in part the judgment of the trial court.[1]

The record reveals the following facts and procedural history relevant to this appeal. On April 1, 2016, the parties' marriage was dissolved. The judgment of dissolution incorporated the parties' separation agreement, which provided for a number of conditions. These conditions included, in part, that (1) the parties were to have joint legal custody of their two children,[2] (2) the plaintiff was to receive $363 per week in child support, which was waived until she no longer resided at the marital residence, (3) the defendant would provide health insurance for the children, the plaintiff would cover copayments related to the children's health treatment, and the children's medical expenses would be allocated equally among the parties, (4) the plaintiff would receive $1 per year in alimony, an amount that could be revisited at a later date, for nine years,[3] (5) the plaintiff was to pay the defendant for the use of a 2016 GMC Acadia in the amount of $387 per month, (6) the plaintiff was to reside at the marital residence with the two children on the condition that she remit payment to the defendant of $1000 per month for rent, and (7) the defendant was to pay the mortgage, taxes, and the water bill for the marital residence and maintain that residence until it sold.

From April 1, 2016 to December, 2017, the parties filed a litany of postjudgment motions. They included (1) the plaintiff's June 9, 2017 motion for modification of alimony, (2) the defendant's September 15, 2017 motion for order pendente lite regarding the GMC Acadia, (3) the defendant's October 20, 2017 motion for contempt, (4) the plaintiff's October 23, 2017 motion for contempt, and (5) the defendant's December 15, 2017 motion for modification requesting that the plaintiff vacate the marital residence, to which the plaintiff filed an objection on December 21, 2017. These motions were either continued or not acted on. On January 24, 2018, the court issued an order notifying the parties that all pending motions were to be heard on February

7, 2018.

On February 7, 2018, the court, *Abery-Wetstone, J.*, held a hearing on the pending motions. At the start of the hearing, the court provided an overview of the ten motions scheduled for that day.[4] After finding that some of the motions were either moot or duplicates, the court whittled down the specific motions it intended to hear. In particular, the court indicated that it would hear the defendant's September 15, 2017 motion for order, the defendant's October 20, 2017 motion for contempt, the plaintiff's October 23, 2017 motion for contempt, and the defendant's December 15, 2017 motion for modification.

Beginning with the first of these motions, the plaintiff admitted to the court that she had failed to pay the defendant for ten months of her use of the GMC Acadia. The plaintiff claimed that her failure to do so was due to a loan she allegedly had made to the defendant after the parties had divorced. The court rejected this reasoning, finding that the plaintiff had been ordered to pay $387 per month for use of the vehicle and that the plaintiff did not subsequently move to modify that order. The court noted that a previous order of the court stated that the plaintiff owed the defendant $8322, which included the ten months of nonpayment for her use of the vehicle. The court found that, in addition to this amount, the plaintiff failed to pay the defendant for three months for use of the vehicle, totaling $1161.

With respect to the plaintiff's October 23, 2017 motion for contempt, the plaintiff asserted that she incurred a number of expenses for which the defendant was obligated to reimburse her. First, the plaintiff delineated her expenses as a result of her attempts to have the septic system at the marital residence repaired. The plaintiff stated that the problems relating to the septic system persisted over an extended period of time and, after the defendant failed to remedy the problem, she hired contractors to fix it. The plaintiff further asserted that, when the defendant did come to the home in an attempt to fix the problem, she refused both the defendant and his friend entry onto the property because she had to leave for work. In response, the defendant stated his concern with the particular invoices and further asserted that he had attempted to have the septic system diagnosed and repaired by a friend. The court noted that the defendant was liable for the maintenance of the house, which included repairs to the septic system, regardless of who made the repairs. The court thus found that the defendant owed $3943.66 to the plaintiff for her expenses related to repairing the septic system. In addition, the court found that the defendant owed the plaintiff $8609.19 with respect to the insurance proceeds he had received as a result of the property damage the plaintiff sustained from a leak in the basement.[5] It also determined that the defendant owed $107.50 for

the children's dental treatment.

After addressing the defendant's December 15, 2017 motion for modification, the court determined that the defendant was owed $2000 in unpaid rent for the plaintiff's time at the marital residence in August and September, 2017. The court rejected the plaintiff's reasoning for withholding the rent to offset her alleged loan to the defendant, explaining that there was "a clear court order saying you pay him $1000 a month for the time you occupy the house." The court further recognized that the defendant had failed to pay the plaintiff child support since she vacated the marital residence.[6] Accordingly, it found that the defendant owed the plaintiff $5351.66 in unpaid child support.

After disposing of these motions, the court summarized the obligations of the parties. In doing so, it found that, in addition to the June 1, 2017 court order stating that the plaintiff owed the defendant $8322, the plaintiff further owed the defendant $2000 for unpaid rent and $1161 for unpaid payments related to her use of the GMC Acadia. The court also found that the defendant owed the plaintiff $3943.66 for her expenses related to the septic system repairs, $5351.66 for unpaid child support payments, and $107.50 for unpaid dental expenses. Thus, the court determined that the difference between the parties' obligations was $2080.18 owed to the defendant. The court ordered that, because the defendant was holding in escrow $8609.19 in insurance proceeds owed to the plaintiff, he should offset $2080.18 owed to him by the plaintiff and turn over to her the remaining proceeds within seven days. Accordingly, the defendant was ordered to pay the plaintiff $6529.01.

Later during the hearing, the plaintiff brought to the court's attention her June 9, 2017 motion to modify alimony. In response, the court noted that the parties did not provide financial affidavits and that, as a result, it could not rule on that motion. After discussing the terms of the alimony previously ordered, the court acknowledged that the plaintiff would not receive either child support or alimony until she vacated the marital residence. It commented that, because the motion was filed in July, 2017—when the plaintiff was still living at the marital residence—it would have been "moot . . . ." Clarifying the issue, the court noted that the plaintiff's June 9, 2017 motion was "not scheduled for today." The court further observed that the motion "appears never to have been acted on" but, considering that the plaintiff had since moved out of the marital residence, it would hear the motion on the condition that the parties provide current financial affidavits. After the plaintiff noted that the parties were ordered to bring updated financial affidavits and cancelled pay stubs, the court ordered a recess for the parties to "fill out a financial affidavit and bring it back . . . ."[7]

Upon returning from the luncheon recess, the court addressed the defendant's argument that, because the parties' minor son had been ordered to live with him for approximately one month to finish high school, he should not be required to pay child support for that period of time. In rejecting this argument, the court explained that, despite the order requiring that the minor child live with him, there still remained an order requiring him to pay child support. Because the defendant did not file a motion to modify his child support obligations, the child support order remained in effect "until it's modified by the court." The court further noted that, if the parties "agreed to do something else [concerning their minor child's custody], you're more than willing to do so, but the child support order remains in full force and effect until a judge . . . says it's different."

Afterward, the court stated that, "[b]ased on your current financial affidavits, I'm going to award alimony in the amount of $200 a week. I'm not going to make it retroactive despite Judge Dolan's indication he would think about it being retroactive. You lived in the house until September, [2017]. So, it . . . certainly wouldn't be retroactive to July, under the terms of your agreement . . . ." In response, the defendant argued that it was the plaintiff's circumstances that changed and pointed to her ability to sustain herself with the $1 per year of alimony previously awarded to her. The court dismissed this argument, noting that it "considered her current job. I considered your current job. I considered your financial affidavits, and that's my order." It further rejected the defendant's argument that, because the plaintiff purchased a new car, she was not entitled to an increase of alimony. The court reasoned that it does not "base child support or alimony on what people spend. I base it on what they earn."

On that same day, the court issued a written order in which it stated in relevant part: "[The] court finds that [the defendant] owes [the plaintiff] $3943.66 for septic repairs. $749.20 plus $893 [the plaintiff] spent on flooring prior to septic problem is not considered as part of the septic reimbursement. . . . [The defendant] owes the [plaintiff] $107.50 in dental bill reimbursement for the children. [The plaintiff] owes to the [defendant] $8322 per Judge Dolan's order dated [June 1, 2017] motion # 126.00. In addition, she owes rent for August and September in the amount of $2000, plus $1161 for the [GMC] Acadia lease payments for December, 2017, and January and February, 2018 ($387 per month).

"[The defendant] owes child support in the amount of $247 per week for October, November, December, 2017, and January and February, 2018, in the amount of $5351.66.

"[The] court finds that the [plaintiff] owes to the

[defendant a] total amount of $11,483 ($8322 plus $2000 plus $1161), and the [defendant] owes to the [plaintiff a] total amount of $9637.08 ($5585.92 plus $107.50 plus $3943.66).

"In addition, [the defendant] shall immediately pay the [plaintiff] $8609.19 held in escrow for damage to her property as a result of the septic failure. He may deduct the difference from the escrow balance ($11,483 minus $9637.08 equals $1845.92) so the [plaintiff] is paid in full within seven days from today. . . .

"[The defendant] shall pay to the [plaintiff] alimony in the amount of $200 per week, pursuant to the financial affidavits submitted February 7, 2018." This appeal followed.[8]

I

The defendant first claims that the trial court's order modifying the defendant's alimony obligations to the plaintiff violated his due process right to receive adequate notice. The defendant argues that the plaintiff's motion to modify alimony was not scheduled for February 7, 2018, and, accordingly, he was not provided notice that the court would act on that motion. The defendant further asserts that, because he did not receive notice, he was not provided with an opportunity to prepare to argue his position or to cross-examine the plaintiff. We disagree.

"It is the settled rule of this jurisdiction, if indeed it may not be safely called an established principle of general jurisprudence, that no court will proceed to the adjudication of a matter involving conflicting rights and interests, until all persons directly concerned in the event have been actually or constructively notified of the pendency of the proceeding, and given reasonable opportunity to appear and be heard. . . . It is a fundamental premise of due process that a court cannot adjudicate a matter until the persons directly concerned have been notified of its pendency and have been given a reasonable opportunity to be heard in sufficient time to prepare their positions on the issues involved." (Citation omitted; internal quotation marks omitted.) *Shapiro* v. *Shapiro*, 80 Conn. App. 565, 568–69, 835 A.2d 1049 (2003). "In keeping with these principles of due process, we have reversed modifications of support orders where the issue of modification was not before the trial court, or where the court did not give adequate notice that it intended to address a modification issue." *Styrcula* v. *Styrcula*, 139 Conn. App. 735, 745, 57 A.3d 822 (2012).

Upon our review of the record, we conclude that the parties, including the defendant, received adequate notice that the plaintiff's June 9, 2017 motion for modification of alimony was subject to being disposed of on February 7, 2018. First and foremost, the record reveals that, on January 24, 2018, the court issued the following

order in response to the vast number of motions filed by the parties: "All pending motions have been continued to [February 7, 2018] to be heard by Judge Abery-Wetstone. The [January 31, 2018] hearing date shall be marked off." The key phrase in the court's order is that *all pending motions* were to be continued until February 7, 2018, and, thus, all such motions were subject to disposition on that date.[9] The defendant does not dispute that the plaintiff's June 9, 2017 motion for modification of alimony was pending. Additionally, there is no indication that the court previously had rendered a decision with respect to that motion.[10] It is, therefore, clear that the defendant received notice prior to the February 7, 2018 hearing that the court intended to dispose of all pending motions, including the plaintiff's outstanding June 9, 2017 motion for modification of alimony.[11]

The defendant principally relies on two cases in support of his position, both of which are easily distinguishable from the present matter. First, the defendant asserts that the circumstances here are "very similar" to those of *Pritchard* v. *Pritchard*, 103 Conn. App. 276, 928 A.2d 566 (2007). In *Pritchard*, this court, on remand from our Supreme Court, was tasked to resolve, inter alia, the state's claim that the trial court improperly had modified a family support magistrate's child support order without providing notice. Id., 278. After being found in contempt for unpaid arrearages, the defendant was arrested after the court issued a capias and was later found by a family support magistrate to have fraudulently conveyed a property to his companion. Id., 280. In response, the state of Connecticut, support enforcement services, filed a motion for reconveyance of that property. Id., 280–81. After the trial court held a hearing on the state's motion, it released the defendant from custody and vacated the arrearage. Id., 281. In doing so, it reasoned that, although it recognized that the defendant had never filed a motion for modification, it was "equitable and appropriate to treat the defendant's April 23, 2003 motion for contempt . . . as a motion to reopen the [contempt] judgment . . . ." (Footnote omitted; internal quotation marks omitted.) Id., 282. In reversing that judgment, this court noted that the only motion before the court when it modified the ongoing support order was the state's motion for reconveyance of real estate. Id., 287. It further emphasized that "there was no motion pending before the court to modify the prior support orders"; id.; and, even though the trial court construed the motion for contempt as a motion to modify, that motion "was not before the court, and the motion before the court did not pertain to child support . . . ." Id., 288. Thus, "none of the parties had notice that the court might vacate the prior contempt and arrearage orders and modify the support order." Id.

In the present case, the court unambiguously notified the parties in its January 24, 2018 order that *all* pending

motions were expected to be addressed at the February 7, 2018 hearing. Unlike the defendant in *Pritchard*, the plaintiff did not fail to file a motion for modification of alimony prior to the hearing. The court in this case did not construe the plaintiff's motion for contempt as a motion to modify but, rather, modified the defendant's alimony requirements pursuant to a pending motion to modify such alimony—as consistent with the court's prior order. The parties clearly "had notice that the court might" modify the alimony order. Id.

The defendant also relies on *Styrcula* v. *Styrcula*, supra, 139 Conn. App. 735. In that matter, the trial court continued an August 9, 2010 hearing on the plaintiff's motion for contempt after questions arose regarding the need for discovery. Id., 739–40. On August 17, 2010, the defendant filed a motion to modify alimony. Id., 740. When the court reconvened on March 1, 2011, for the continuation of the August 9, 2010 hearing, both the parties and the court continuously affirmed that the only issue to be addressed was the plaintiff's motion for contempt. See id., 740–42. Notwithstanding these assurances, the court issued a memorandum of decision on April 5, 2011, granting the defendant's motion for modification. Id., 742–43. This court reversed the trial court's judgment, holding that "the court gave no indication to the parties that it planned to consider the defendant's motion for modification before, during or after the March 1, 2011 hearing. To the contrary, the court told the parties the exact opposite—it planned to use the hearing to resolve the 'unfinished business' from August, 2010, and 'finish up' the plaintiff's contempt motion . . . ." Id., 746–47. The court further observed that, after hearing argument from both parties as to what motions were to be disposed of, "the court specifically informed the parties that it would *not* be considering the defendant's modification unless 'lightning struck' and both parties agreed to put the modification issue before the court." (Emphasis in original.) Id., 747. Thus, this court determined that, "[g]iven the clear statements of the parties and the court, we cannot conclude on this record that the parties had adequate notice that the court intended to decide the defendant's motion for modification after the March 1, 2011 hearing." Id., 747–48.

For the reasons that *Pritchard* is inapposite to the present matter, so, too, is *Styrcula*. As previously discussed, the court's January 24, 2018 order stated that *all* pending motions—the plaintiff's June 9, 2017 motion for modification included—were to be addressed at the February 7, 2018 hearing. Furthermore, and in contrast to *Styrcula*, the court made clear during the hearing that it intended to address the plaintiff's June 9, 2017 motion after the plaintiff noted that, like the panoply of motions the parties had filed, it, too, remained pending. The court thereafter notified the parties that it planned to address that motion for modification of ali-

mony upon returning from the luncheon recess and ordered the parties to provide updated financial affidavits. At no point did the court affirmatively state that it did not intend to rule on the plaintiff's June 9, 2017 motion after the plaintiff notified the court about its pendency. To the contrary, the court explicitly stated that, because all pending motions were to be addressed at the hearing, it would do so after the recess.

We further note that, in contrast to the circumstances in *Styrcula*, the February 7, 2018 hearing was not a continuation of a previous hearing on a different motion. Rather, that hearing clearly was intended to act as a vehicle to dispose of motions that had cluttered the docket and that were pending for months after being repeatedly continued. Last, unlike the plaintiff in *Styrcula*, at no point did the defendant state his surprise or express the need for more time to present evidence on the issue of modifying alimony.[12] Instead, the record reflects that the defendant argued his position before the court and attacked the substance of the plaintiff's financial affidavit proffered in support of her motion. Thus, we are unconvinced that the circumstances of the defendant in this matter are analogous to *Styrcula* in any material way.

In sum, our review of the record leads us to conclude that the defendant was on notice that the court might dispose of the plaintiff's June 9, 2017 motion for modification at the February 7, 2018 hearing. Cf. *Pritchard* v. *Pritchard*, supra, 103 Conn. App. 288. The court's January 24, 2018 order unambiguously stated that all pending motions were to be addressed on February 7, 2018. The record further indicates that, during a previous hearing, the court notified the parties that the issue of alimony was to be addressed with all the other pending motions. See footnote 8 of this opinion. Nothing in the record suggests that the defendant was without notice, that the court indicated it would not rule on the motion for modification, or that his ability to present evidence or to cross-examine the plaintiff was hindered. Cf. *Styrcula* v. *Styrcula*, supra, 139 Conn. App. 747 n.10 (noting potential arguments plaintiff claims she would have asserted in opposition to motion for modification in absence of lack of notice). Accordingly, we conclude that the defendant received adequate notice in satisfaction of his right to due process.

## II

The defendant next claims that the court improperly ordered him to reimburse the plaintiff for her expenses related to fixing the septic system at the marital residence. According to the defendant, the court abused its discretion by failing to consider the plaintiff's conduct in relation to the defendant's efforts to make the repairs himself. The defendant further argues that the court failed to apply the unclean hands doctrine. We disagree.

We begin by noting that, although the court's order arose out of the plaintiff's motion for contempt, it did not find the defendant in contempt of a prior order. Instead, the court's order requiring the defendant to reimburse the plaintiff for her expenses was remedial in nature. "[A] trial court possesses inherent authority to make a party whole for harm caused by a violation of a court order, even when the trial court does not find the offending party in contempt. . . . In addition, it has long been settled that a trial court has the authority to enforce its own orders. This authority arises from the common law and is inherent in the court's function as a tribunal with the power to decide disputes. . . .

"We further recognize that [a]lthough [a] court does not have the authority to modify a property assignment, [the] court, after distributing property, which includes assigning the debts and liabilities of the parties, does have the authority to issue postjudgment orders effectuating its judgment. . . . [A]n order effectuating an existing judgment allows the court to protect the integrity of its original ruling by ensuring the parties' timely compliance therewith." (Citations omitted; internal quotation marks omitted.) *Nappo* v. *Nappo*, 188 Conn. App. 574, 596, 205 A.3d 723 (2019).

In the present matter, there is no dispute that, pursuant to the dissolution judgment and the court's April 1, 2016 order, the defendant was obligated to maintain the marital residence until it was sold. There is also no dispute that the septic system at the marital residence required repairs due to recurring problems. As the court correctly observed: "[T]here is a court order saying [that the defendant] has to maintain the family home, and if [the plaintiff] paid to have the septic pumped out, then [the defendant] has to pay you back for that." Yet, according to the plaintiff, she repeatedly notified the defendant of these issues and requested that he address them, ultimately to no avail. The receipts that the plaintiff introduced into evidence reflect that she hired licensed contractors throughout 2017. In response, the defendant argued to the court that the plaintiff blocked any effort he made to have his preferred contractors address the septic system issue.

On our review of the record, we conclude that the court acted well within its discretion to order the defendant to reimburse the plaintiff for costs related to repairing the septic system. The court plainly considered the arguments of both parties and the evidence proffered. As the court noted, "regardless of [which] person fixed [the septic system], [the defendant is] liable for the maintenance of the house . . . ." When asked by the court if his "septic guy" was available to testify that he diagnosed a problem with the septic system, the defendant responded in the negative. He acknowledged that this person was not a licensed contractor and did not charge him for the work. After hear-

ing both parties on the issue of the septic system expenses, the court found that the plaintiff expended $3943.66 on septic repairs and ordered the defendant to, inter alia, reimburse her for that amount. In stating its conclusion, the court explicitly stated that it was excluding the costs of the repairs to the basement floor, finding that those expenses occurred "significantly prior to the septic mess." The court considered the evidence presented by the parties and rendered its decision accordingly. Thus, we believe that the court's decision to require the defendant to reimburse the plaintiff for the septic system repairs was well within its discretionary authority.

The defendant further argues that the court failed to apply the unclean hands doctrine. According to the defendant, the plaintiff's alleged obstruction of the defendant's effort to repair the septic system constituted unclean hands.

"The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue. . . . The party seeking to invoke the clean hands doctrine to bar equitable relief must show that his opponent engaged in wilful misconduct with regard to the matter in litigation. . . . The trial court enjoys broad discretion in determining whether the promotion of public policy and the preservation of the courts' integrity dictate that the clean hands doctrine be invoked." (Internal quotation marks omitted.) *Bank of America, N.A.* v. *Aubut*, 167 Conn. App. 347, 380, 143 A.3d 638 (2016).

The defendant's claim fails for two reasons. First, our review of the record establishes that this claim on appeal is unpreserved. See *Curtis* v. *Curtis*, 134 Conn. App. 833, 847, 41 A.3d 318 (2012) ("[i]t is well settled that this court cannot review a claim that is advanced for the first time on appeal and not raised before the trial court" (internal quotation marks omitted)); see id. (refusing to review unpreserved claim that court failed to apply unclean hands doctrine). At no point during the underlying proceedings did the defendant raise the unclean hands doctrine with the trial court, either during the February 7, 2018 hearing or the subsequent June 12, 2018 hearing on his motion to reargue. Second, even if this claim was preserved, and assuming that the unclean hands doctrine affords the relief that the defendant seeks; see *Spencer* v. *Spencer*, 177 Conn. App. 504, 523, 173 A.3d 1 (2017) (assuming, without concluding, that unclean hands doctrine affords relief sought by plaintiff in trial court's postdissolution termination of her alimony), cert. granted on other grounds, 328 Conn. 903, 177 A.3d 565 (2018); we conclude that it is without merit. The record reflects that the court considered the defendant's argument that the plaintiff should not be entitled to reimbursement because she allegedly pre-

vented the defendant and his "septic guy" from accessing the septic system. The court was entitled to broad discretion with respect to its decision to apply the unclean hands doctrine. See *Bruno* v. *Bruno*, 177 Conn. App. 599, 622 n.5, 176 A.3d 104 (2017) (concluding that trial court did not abuse its discretion in finding defendant in contempt in postdissolution proceeding even after finding plaintiff had unclean hands). As we have discussed at length, the court acted well within its discretion to order the defendant to reimburse the plaintiff for these costs. Such discretion equally applied to the court's decision on the applicability of the unclean hands doctrine. Accordingly, we reject the defendant's claim.

### III

In his final claim, the defendant argues that the court improperly failed to apply § 46b-224 by refusing to credit the time the minor child was in his custody when it calculated the defendant's child support arrearage. According to the defendant, § 46b-224 operates to automatically suspend a child support order in the event that the obligor receives custody of the minor child as a result of a court order. Thus, the defendant asserts that the court improperly calculated his arrearage without deducting a pro rata amount reflecting the time that the minor child remained in his custody. We agree.

The following additional facts are relevant to resolving this claim. On June 1, 2017, the court, *Hon. Edward J. Dolan*, judge trial referee, provided a written order in which it stated, inter alia, that "[w]hen only one child is eligible for child support the child support amount shall be $247 per week." On September 11, 2017, the court ordered the plaintiff "to move out of the marital [residence] by [September 30, 2017]."[13] On November 15, 2017, in a written order, the court, *Abery-Wetstone, J.*, ordered, inter alia, the plaintiff "to immediately bring [the minor child] back to [the defendant's] house to live with [the defendant] and finish high school. [The plaintiff] shall have visitation with [the minor child] every other weekend, with pickup from school on Friday and dropoff Monday morning at school. . . . [The plaintiff] shall have dinner with [the minor child] every Wednesday, with pickup from school and dropoff at 9:30 p.m. at [the defendant's] house."

During the February 7, 2018 hearing, the court, in disposing of the plaintiff's motion for contempt, addressed the defendant's child support arrearage obligations. The court recognized that, pursuant to Judge Dolan's June 1, 2017 order, the defendant was obligated to pay $247 a week in child support. The plaintiff stated that the defendant failed to pay child support for five months but further suggested that the court "could subtract two weeks because [the minor child] was living with [the defendant] for two weeks." The court explained to the defendant that "[i]f Judge Dolan

ordered [the child support payments] and nobody filed a motion to—for clarification or to change . . . the $247, you're stuck with [it]. Okay. There's no appeal. There's nothing. So, you owed her $5351.66 from October to February for support of one child."

Upon returning from the luncheon recess, the defendant asked the court to revisit the issue of the child support arrearage. The defendant corrected the court's previous statement by noting that it was Judge Abery-Wetstone, not Judge Dolan, who issued the order changing custody of the minor child. After the defendant renewed his previous argument about reducing the arrearage to credit the time the minor child lived with him, the court again rejected it. It noted that, although it remembered its previous order, "you still owe the child support even though [the minor child] was with you for a month." The court further stated that, if the defendant felt the need to file a motion to modify child support, he was entitled to do so. It explained that its order requiring the minor child to live with the defendant was an attempt "to make sure [the minor child] would be able to finish high school with his friends in his class. . . . If the [parties] agreed to do something else, you're more than willing to do so, but the child support order remains in full force and effect until a judge . . . says it's different." The court thereafter ordered the defendant to pay $5351.66 in child support arrearage for the unpaid months of October, November, December, 2017, and January and February, 2018.

The following legal principles govern our resolution of this claim. First, we note that the defendant's claim necessarily involves interpreting an existing statute. It is well settled that, under such circumstances, our review is plenary. See, e.g., *Tomlinson* v. *Tomlinson*, 305 Conn. 539, 546, 46 A.3d 112 (2012). "To the extent that this task requires us to interpret the meaning and application of the relevant statutes in relation to the facts of the case, our analysis is guided by General Statutes § 1-2z, which directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) Id., 546–47.

Section 46b-224 provides in relevant part: "Whenever the . . . Superior Court, in a family relations matter, as defined in [General Statutes §] 46b-1, orders a change or transfer of the guardianship or custody of a child who is the subject of a preexisting support order, and the court makes no finding with respect to such support order, such guardianship or custody order shall operate to: (1) Suspend the support order if guardianship or custody is transferred to the obligor under the support

order; or (2) modify the payee of the support order to be the person or entity awarded guardianship or custody of the child by the court, if such person or entity is other than the obligor under the support order."

Our Supreme Court has previously interpreted § 46b-224, concluding that the statute's express terms are clear. See *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 551. In *Tomlinson*, our Supreme Court determined that § 46b-224 operates to allow modification of a child support order despite the existence of a nonmodification provision in the parties' separation agreement. Id., 550–51. In reaching that conclusion, the court explained that § 46b-224 "specifically addresses the question of how a change in custody affects the payment of child support . . . . Thus, [under § 46b-224] if the obligor becomes the new primary custodial parent, the obligor is no longer required to pay child support to the former custodian. Similarly, if custody is transferred to a third party, the obligor thereafter must make the child support payments to that third party rather than to the original custodian. The immediate result in either case is the same: the originally designated payee who no longer has custody of the child does not continue to receive support payments following the change in custody, and the payments are retained by or redirected to the party who does have custody." Id., 549–50. The court in *Tomlinson* further noted that, "[b]y its own language, § 46b-224 suspends or redirects child support payments upon a change of custody when the court makes no finding with respect to such support order . . . . It therefore sets a default rule that child support follows the children, unless the trial court has made a finding that another arrangement is appropriate." (Internal quotation marks omitted.) Id., 554.

We believe that *Tomlinson* is instructive in the present case. There is no dispute that the defendant was ordered to pay $247 per week in child support. The plaintiff, by order of the court, left the marital residence on or before September 30, 2017, and was therefore entitled to child support payments as provided for under the dissolution judgment. Furthermore, there is no dispute that, on November 15, 2017, the parties' minor child was ordered by the court to live with the defendant for a period of time. As the court explained during the February 7, 2018 hearing, its order transferring custody of the minor child to the defendant was "to make sure [the minor child] would be able to finish high school with his friends in his class." Thus, pursuant to § 46b-224, the defendant's child support obligations were suspended for the period of time that the minor child was in his custody. That suspension ceased once the minor child left the defendant's custody.

Furthermore, the record provides no indication that, in ordering the change in custody of the minor child, the court made a finding "that another arrangement"

with respect to the defendant's child support obligations was appropriate. See *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 554. Instead, it appears that the court's refusal to consider the period of time that the defendant had custody of the minor child rested on the defendant's failure to file a motion for modification of child support. Section 46b-224, however, plainly requires that, upon the court's ordering a change of custody of the minor child from the plaintiff to the defendant—albeit temporarily—such "custody order *shall operate* to" suspend the child support order requiring the defendant to pay the plaintiff $247 per week.[14] (Emphasis added.)

Thus, because the November 15, 2017 order transferred custody of the minor child to the defendant, the court's child support order was suspended until the minor child returned to the plaintiff's custody pursuant to § 46b-224 (1). Accordingly, the court improperly calculated the defendant's child support arrearage by failing to deduct the amount for the period of time that the minor child was in the defendant's custody. Because the court made no finding with respect to the precise period of time that the minor child was in the defendant's custody, that issue "must be resolved by the court during the proceedings on remand." *Tatoian* v. *Tyler*, 194 Conn. App. 1, 66, 220 A.3d 802 (2019), cert. denied, 334 Conn. 919, 222 A.3d 513 (2020).

The judgment is reversed only as to the calculation of the defendant's child support arrearage and the case is remanded for further proceedings consistent with this opinion; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] We note that the plaintiff filed a cross appeal from the trial court's February 8, 2018 judgment, claiming that the court had improperly failed to make the alimony award retroactive. During oral argument before this court, however, the plaintiff acknowledged that she had abandoned that claim because it was not briefed. See, e.g., *Brody* v. *Brody*, 153 Conn. App. 625, 629 n.3, 103 A.3d 981, cert. denied, 315 Conn. 910, 105 A.3d 901 (2014).

[2] The record reflects that the parties have two children, only one of whom was a minor child at the time that the court rendered its judgment on February 7, 2018. For convenience, we refer to the parties' child who is relevant to this appeal as "the minor child" in this opinion.

[3] In its order awarding the plaintiff $1 per year in alimony, the court expressly stated that the amount of alimony would be subject to modification "without the showing of a substantial change of circumstances."

[4] During this canvass, the court did not consider whether the plaintiff's motion to modify alimony would go forward that day.

[5] The defendant previously had been ordered to keep the insurance proceeds in an escrow account.

[6] We note that, although the court appears to have brought up the issue of the defendant's child support obligations in addressing the defendant's December 15, 2017 motion, the plaintiff raised this particular issue in her December 21, 2017 objection to that motion.

[7] During oral argument before this court, the plaintiff explained that the order requiring the parties to bring updated financial affidavits was made orally by Judge Abery-Wetstone. We note, however, that the relevant transcript at issue is not in the record before us.

[8] After commencing this appeal, the defendant filed a motion to reargue the court's February 7, 2018 order increasing his alimony obligations to the plaintiff. On June 12, 2018, the court held a hearing and addressed the

defendant's motion. That motion was subsequently granted.

During the hearing on that motion, the court acknowledged that Judge Dolan had previously stated that the motion to modify alimony would be argued "when everything was argued . . . ." The court also stated that, although Judge Dolan had previously indicated that the court could make alimony retroactive, "I did not make it retroactive." It continued that "[t]here were so many continuances filed in this matter that it's impossible to hear any motion in a timely manner because everything appears on the short calendar, they can't resolve it, they get a hearing date, the hearing date gets postponed; I mean, I was hearing motions that were filed months before February 7, [2018], which was the date that I heard the motion. . . . And . . . a substantial change of circumstances was the fact that [the plaintiff] was no longer residing in the house, and she was entitled to child support from September going forward and she was entitled to alimony going forward because the cost of her housing for herself and the children had significantly increased. That was the substantial change of circumstances." After the court emphasized the drastic changes in her rent after the plaintiff vacated the marital residence, it again reiterated that the plaintiff's rent "went from $1000 . . . to almost $1500 a month. So, that was a substantial change in circumstances."

[9] We further find significant that, during the June 12, 2018 hearing on the defendant's motion to reargue, the court agreed with the plaintiff that Judge Dolan had notified the parties at a previous hearing that the issue of alimony would be argued "when everything was argued . . . ." In fact, on November 15, 2017, the court ordered the parties "to schedule a full day trial regarding the outstanding motions" with case flow, and further ordered that "[a]ll motions shall be consolidated to be heard on the trial date, including any motions filed up until two weeks before the trial date."

[10] Although the defendant's trial counsel appears to have argued that the court had previously ruled on the plaintiff's June 9, 2017 motion during the June 12, 2018 hearing, nothing in the record supports that assertion.

[11] We disagree with the defendant's emphasis on the court's acknowledgment that the plaintiff's June 9, 2017 motion was not "on" for the February 7, 2018 hearing. The court's January 24, 2018 order explicitly stated that it intended to dispose of all pending motions. Given the court's herculean efforts to untangle and dispose of multiple motions festering over six months on the court docket, we believe it to be immaterial that the court missed this particular motion in its preliminary overview of the pending motions at the beginning of the hearing.

[12] We recognize that the defendant, during this stage of the underlying proceedings, was a self-represented party, whereas the plaintiff in *Styrcula* was represented by an attorney. "Although we allow [self-represented] litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *Aley* v. *Aley*, 97 Conn. App. 850, 853, 908 A.2d 8 (2006). Thus, we do not believe it to be insignificant that the defendant failed to ask for a continuance in light of his alleged lack of notice. See id. (in holding that self-represented defendant received notice of dissolution proceeding, court noted that defendant "could have made a motion for a continuance, but he did not").

[13] The parties do not dispute that, at the time the plaintiff moved out of the marital residence on September 30, 2017, only one child—their minor son—was eligible for child support. See footnote 2 of this opinion.

[14] We note that, unfortunately, the defendant, as a self-represented litigant, failed to cite to the court the provisions of § 46b-224, but, by asserting the principle that he was entitled to credit, properly preserved the issue for purposes of appeal. See *DeChellis* v. *DeChellis*, 190 Conn. App. 853, 861, 213 A.3d 1 ("[a]lthough a party need not use the term of art applicable to the claim, or cite to a particular statutory provision or rule of practice to functionally preserve a claim, he or she must have argued the underlying principles or rules at the trial court level in order to obtain appellate review" (internal quotation marks omitted)), cert. denied, 333 Conn. 913, 215 A.3d 1210 (2019).